

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0238-11

**TIMOTHY LEE ROBINSON, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SIXTH COURT OF APPEALS
### TITUS  COUNTY

**PRICE, J., delivered the opinion for a unanimous Court.**

## O P I N I O N

The appellant was convicted of possession with intent to deliver a controlled substance, namely cocaine, in the amount of 200 grams or more but less than 400 grams,[1] and the jury sentenced him to twenty years in prison with a $10,000 fine.  In an unpublished opinion, the Texarkana Court of Appeals reversed his conviction, finding that, although the trial court did not abuse its discretion in denying the appellant's motion to suppress, the trial

---

[1] TEX. HEALTH & SAFETY CODE §§ 481.102(3)(D), 481.115(e).

court's failure to provide a jury instruction pursuant to Article 38.23(a) of the Texas Code of Criminal Procedure was error for which the record demonstrated egregious harm, warranting remand for a new trial.[2]  We granted the State Prosecuting Attorney's (SPA) petition for discretionary review to address its sole issue with regard to the propriety of the trial court's decision to deny an Article 38.23(a) jury instruction.

## FACTS AND PROCEDURAL POSTURE

### The Motion to Suppress

Prior to trial, the appellant filed a motion to suppress any and all evidence stemming from the traffic stop in this case.  The appellant's motion argued, *inter alia*, that the traffic stop, purportedly for the failure to signal a turn at an intersection, was a pretext to justify an ongoing investigation of the appellant.  The motion claimed that the arrest occurred without a warrant on the basis of a tip from an unidentified and unreliable informant and that any statements and/or recordings obtained as a product of the appellant's arrest were therefore tainted by this illegal stop.  At a pre-trial hearing on the appellant's motion, the only witness was Detective Cesar Muñoz of the Mount Pleasant Police Department.  The trial court denied the appellant's motion to suppress, finding that probable cause existed to justify the initial stop of the appellant and that the appellant voluntarily consented to the search that led to the

---

[2]  *Robinson v. State*, No. 06-09-00225-CR, 2011 WL 192752, at *1 (Tex. App.—Texarkana Jan. 13, 2011) (not designated for publication); TEX. CODE CRIM. PROC. art. 38.23.

discovery of the contraband.[3]

## B. The Evidence at Trial

The issue of the legality of the initial traffic stop was re-litigated during the appellant's jury trial. The jury heard that, in the early morning hours of August 25, 2008, Muñoz received an anonymous call to his cell phone. The caller informed Muñoz that a "Mr. Robinson" would be arriving back in Mount Pleasant from Dallas transporting a "large amount" of cocaine. Muñoz called Officer Simon Porter with the narcotics patrol division and informed him of the tip. The two positioned themselves in their respective police cruisers at opposite ends of the street on which the appellant's known address, 511 Margaret Drive, was located. Muñoz was parked facing eastbound at the intersection of East Eighth Street and Margaret Drive.[4] From this vantage, Muñoz observed the appellant, who was

---

[3] These findings were made orally on the record at the motion to suppress hearing, but the court of appeals later abated the case to the trial court to enter written findings of fact and conclusions of law. After remand, the only finding relevant to the traffic stop stated: "1. The Court FINDS that on August 25, 2008, Timothy Lee Robinson was stopped by Mt. Pleasant Police Department officers for a traffic violation." There were no specific findings of fact relating to the appellant's use of his turn signal or the character of the roadway. The trial court also did not make a credibility determination as to Muñoz's testimony. Moreover, there was no specific conclusion of law relating to the underlying question of whether Muñoz had the necessary reasonable suspicion to stop the appellant for a traffic violation. In a recent opinion in *State v. Mendoza*, we observed that, in reviewing a trial court's ruling on a motion to suppress, appellate courts should not have to "presume, assume, or guess" what historical facts a trial judge found in making his or her written findings and conclusions when those factual findings are incomplete or ambiguous. 365 S.W.3d 666, 671 (Tex. Crim. App. 2012).

[4] At this location in Mount Pleasant, the numbered streets generally run east and west and decrease in number as motorists travel southbound. Thus, Eighth Street is located one block south of Ninth Street as both streets approach Margaret Drive, which runs more or less north to south at this location.

driving a black Dodge Charger and traveling eastbound on Ninth Street, "merge" right onto Margaret Drive, and fail to use his turn signal. Muñoz activated his overhead lights to initiate a traffic stop. The appellant pulled into his driveway on Margaret Drive. Muñoz and Porter pulled up behind the appellant and, after exiting their respective patrol cars, both reported smelling burnt marijuana upon approaching the appellant's car. The appellant consented to a search of the Charger and was arrested after Muñoz discovered a bag of crack cocaine lying on the concrete driveway directly below the front passenger seat.

At issue at trial was whether the character of the roadway at the point where Ninth Street "merged" into Margaret Drive was such that a turn signal was legally required. It was Muñoz's opinion that a traffic infraction occurred when the appellant, traveling from Ninth Street to Margaret Drive, "continued to the right without turning his turn signal on[,]" which the appellant had "a duty" to do at "the intersection." Muñoz acknowledged that there are no traffic signals or signs at this "intersection"; however, Muñoz did not waver from his position that, although the flow of traffic at this juncture could be characterized as simply "following" the roadway around onto Margaret Drive, to "turn" or "continue" onto Margaret Drive from Ninth Street without a signal is a violation of the law.

Lakeshia Williams was in the passenger seat of the appellant's car at the time of the stop. She testified during the appellant's case-in-chief that, "[i]f you turn left" from Ninth Street onto Margaret Drive, "you have to put a signal on"; whereas to "turn right, you [are] just going around the corner" as Ninth Street "curves" into Margaret Drive. She also

acknowledged that there are no traffic signs or signals at this "curve" to indicate that it is an intersection at which a person must use a turn signal; "You just go." Williams conceded, however, that, unlike Muñoz, she was not a peace officer and that she had no extensive knowledge or experience with the traffic laws.[5]

## C. The Jury Charge Conference

The trial court held a charge conference on the record to permit defense counsel to raise his objections to the court's proposed charge. The appellant objected to the absence of an instruction under Article 38.23(a) of the Code of Criminal Procedure, specifically requested such an instruction, and asked the trial court reconsider its ruling on his pre-trial motion to suppress the evidence obtained as a result of the traffic stop.[6] The tendered instruction would have directed the jury to determine whether the appellant was "required

---

[5]

Other than this short portion of Williams's testimony regarding the nature of the flow of traffic on the roadway, the appellant's case-in-chief focused primarily on attacking the State's lack of evidence connecting the appellant to physical possession of the cocaine found under the car and casting doubt on whether the appellant admitted to possession at the scene of the arrest.

[6]

The entirety of defense counsel's argument at the charge conference was as follows:

> We would object to the charge on the basis that we believe it should contain an instruction, which we will be tendering to the Court, that reflects Article 38.23 of the Code of Criminal Procedure, which deals with evidence not to be considered in certain situations.
> And we would also urge the Court to reconsider its ruling on the traffic stop that occurred in this incident based on the case of Trahan versus State, 16 S.W.3d 146. It's a 2000 Court of Appeals case out of the Beaumont Court of Appeals, which in effect holds that 90-degree turns of automobiles is a type of turn contemplated in the transportation statute providing a turn signal must be used to indicate intent to turn.
> And for that, we would offer that as a formal objection to the charge.

to use a turn signal[.]"[7] The trial court overruled the appellant's objection, declined to submit

his requested instruction, and refused to revisit its ruling on the motion to suppress.

## D. On Direct Appeal

After the jury convicted him, the appellant raised two related issues on appeal with

---

[7]

  The appellant's proposed instruction read, in relevant part:

> You are instructed that no evidence obtained by an officer or other person in violation of any of provisions of the Constitution or laws of the State of Texas, or the Constitution or laws of the United States of America, shall be admitted in evidence against the accused in the trial of any criminal case. You are further instructed that an officer is permitted to make a temporary investigative detention of a motorist if the officer has specific articulable facts which, taken together with rational inferences from those facts, leads him to conclude that a person detained actually is, has been, or soon will be engaged in criminal activity.

> The law regarding use of turn signals states that an operator shall signal by hand and arm or by signal lamp to indicate an intention to turn, change lanes, or start from a parked position. An operator intending to turn a vehicle right or left shall signal continuously for not less than the last 100 feet of movement of the vehicle before the turn.

> Now, bearing in mind if you find from the evidence that on the occasion in question that Timothy Robinson, the driver of the vehicle, was not required to use a turn signal preceding his stop and detention by the officers herein or you have a reasonable doubt thereof, then such stopping of Timothy Robinson would be illegal and, if you find the facts so to be, or if you have a reasonable doubt thereof, you will disregard the testimony of the officer relative to his stopping the Defendant's vehicle and his conclusions drawn as a result thereof and you will not consider such evidence for any purpose whatsoever.

> \*    \*    \*

The tendered instruction tracks language from Article 38.23(a) and Sections 545.104 and 545.106 of the Texas Transportation Code. *See* TEX. CODE CRIM. PROC. art. 38.23(a); TEX. TRANSP. CODE. §§ 545.104, 545.106. The remainder of the instruction concerned the development of probable cause to search and arrest following the traffic stop.

respect to the legality of the traffic stop. First, he argued that the trial court erred in failing to grant his motion to suppress the evidence obtained as a result of that stop. Second, he argued that the trial court erred in refusing his requested Article 38.23(a) jury instruction. As to the suppression issue, the appellant argued that he had not executed a "turn" at an "intersection,"[8] despite Muñoz's "unsupported" characterization of the roadway, and therefore, he was not legally required to use his turn signal. For this reason, he maintained, the traffic stop was unjustified. With regard to the jury instruction issue, the appellant pointed to three contested issues of fact that he claimed were raised by the evidence at trial that entitled him to an Article 38.23(a) instruction.

The State countered the appellant's suppression issue by arguing that the trial court did not abuse its discretion in denying the motion to suppress because the appellant's failure to signal violated the Transportation Code and/or the Mount Pleasant city ordinances, and, in any event, Muñoz's reasonable *belief* that the appellant was required to signal was sufficient to initiate a traffic stop without the State having to satisfy a burden to prove that a traffic offense was *actually* committed. In response to the Article 38.23(a) jury instruction issue, the State directly disputed that the three fact issues the appellant identified were

---

[8] Chapter 541 of the Texas Transportation Code defines "intersection" as "the common area at the junction of two highways, other than the junction of an alley and a highway." *See* TEX. TRANSP. CODE § 541.103. The Transportation Code does not define "turn," however. The appellant cited *Trahan v. State* for the proposition that "a ninety degree turn is exactly the type of turn contemplated by" the Transportation Code, and "the code does not equate moving right or left to a 'turn[.]'" 16 S.W.3d 146, 147 (Tex. App.—Beaumont 2000, no pet.).

genuinely contested at trial, or, perhaps more importantly, even amounted to issues of historical fact, as distinguished from questions of law that are properly reserved for determination by the trial court.

The court of appeals, although disagreeing with the appellant that the trial court abused its discretion in denying his motion to suppress,[9] nevertheless reversed the appellant's conviction on the jury charge issue. Applying the three-step test that this Court laid out in *Madden v. State*,[10] the court of appeals first found that the appellant had indeed raised a "disputed issue of historical fact[,]" namely, whether a reasonable officer would have concluded that the appellant's conduct amounted to a traffic violation. Second, the court of appeals determined that the appellant presented affirmative evidence of this disputed historical fact; and third, the court of appeals found this issue to be material to the lawfulness

---

[9] *Robinson*, *supra*, at *1. The court of appeals found that the specific "junction" of Ninth Street and Margaret Drive *is* an "intersection" as defined by the Transportation Code; however, the court explained that what is more important to resolution of the issue is "the course of the road and traffic" at that location—i.e. "whether the traffic of Ninth Street **merges** onto Margaret or whether the traffic from Ninth Street **turns** onto Margaret." *Id.* at *4. The court explained, however, that because the record did not "conclusively establish" one way or the other—whether the traffic merged *versus* turned—a reasonable officer could have believed, even if mistakenly, that the two streets did not "merge" and therefore *required* a signal. *Id.* at *5. For this reason, the court of appeals held that the trial court did not abuse its discretion in denying the appellant's motion to suppress. *Id.*

[10] 242 S.W.3d 504, 510 (Tex. Crim. App. 2007) (listing three requirements a defendant must meet before he is entitled to the submission of a jury instruction under Article 38.23(a): (1) the evidence heard by the jury must raise an issue of fact; (2) the evidence on that fact must be affirmatively contested; (3) that contested factual issue must be material to the lawfulness of the challenged conduct in obtaining evidence.).

of the initial detention.[11] Concluding that the trial court therefore erred in failing to submit an Article 38.23(a) instruction, the court of appeals determined that the error was not harmless because, in the absence of such an instruction, the State was relieved of its burden to establish the reasonableness of the traffic stop and the jury was never made aware of the effect an illegal stop would have on the admissibility of evidence obtained as a result.[12] The court of appeals remanded the cause to the trial court for further proceedings not inconsistent with its opinion.

The SPA petitioned this Court for discretionary review, raising only the issue of whether the reasonableness of Muñoz's belief that a turn signal was necessary constitutes an issue of historical fact to be submitted to the jury in the form of an Article 38.23(a) instruction. We granted review of the SPA's sole issue to assess the proper role of the jury under an Article 38.23(a) instruction.

## ANALYSIS

The SPA argues in its brief to this Court that there were no disputed issues of fact

---

[11]

*Robinson*, *supra*, at *9.

[12]

The court of appeals found harm by applying the "egregious harm" standard for jury charges that this Court set forth in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (opinion on reh'g). *See Robinson*, *supra*, at *9 (citing *Almanza*). Although the appellant objected to the lack of an Article 38.23 instruction during the court's charge conference at trial, the court of appeals found that the proposed charge that the appellant submitted to the trial court was incorrect. *Id.* at *9-10. Because it found that the appellant failed to present a proper instruction, the court of appeals reviewed any error in failing to give what it considered to be a proper Article 38.23 instruction only for egregious harm. *Id.* at *10-11.

presented at trial that would entitle the appellant to an Article 38.23(a) instruction to the jury; and because the jury is not permitted to answer questions of law, whether Muñoz believed that the law required the appellant to signal at the point at which Ninth Street "merges" with Margaret Drive was not an appropriate question for the jury. The SPA identifies the "material fact" in this case as "the configuration of the meeting of Ninth and Margaret," but argues that this fact was not actually disputed at trial.[13] Muñoz and Williams, the only two witnesses who testified to the configuration of the intersection, agreed that Ninth Street "merges" or "continues" into Margaret Drive; it merely changes names, according to the SPA.[14] Whether or not the appellant was required to use a turn signal at this "meeting" of the two roadways was an application-of-law-to-fact question that is properly left for the trial court's determination.[15] We agree.

Under Article 38.23(a), "[n]o evidence obtained by an officer . . . in violation of any

---

[13] SPA's Brief at 4.

[14] *Id*. at 5.

[15] The SPA cites *Mahaffey v. State* in support of the position that whether a turn signal was required at this point in the roadway was "purely a question of law." *Id*. at 5 (citing *Mahaffey*, 316 S.W.3d 633, 637 (Tex. Crim. App. 2010) (hereinafter "*Mahaffey I*"). At the time the SPA submitted its brief to this Court, our opinion in *Mahaffey II* had not yet issued. *See Mahaffey v. State*, 364 S.W.3d 908 (Tex. Crim. App. 2012) (hereinafter "*Mahaffey II*"). But this second opinion does not affect the SPA's position that the issue submitted to the jury in appellant's case was an issue of law; and in fact, *Mahaffey II* further supports that position. *See generally id.* (reviewing the issue of whether the driver's conduct constituted a lane change under the signal statute, requiring the use of a turn signal). Our ultimate holding in *Mahaffey II*—that a driver is *not* required to signal a lane change when his lane *merges* with another lane—does not undermine the SPA's argument here.

provisions of the Constitution or laws . . . shall be admitted in evidence against the accused" at trial.[16] When evidence presented before the jury raises a question of whether the fruits of a police-initiated search or arrest were illegally obtained, "the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained."[17] To be entitled to an Article 38.23(a) instruction, we held in *Madden*, the defendant must show that (1) an issue of historical fact was raised in front of the jury; (2) the fact was contested by affirmative evidence at trial; and (3) the fact is material to the constitutional or statutory violation that the defendant has identified as rendering the particular evidence inadmissible.[18] When a disputed, material issue of fact is successfully raised, the terms of the statute are mandatory, and the jury must be instructed accordingly.[19] Evidence to justify an Article 38.23(a) instruction can derive "from any source," no matter whether "strong, weak, contradicted, unimpeached, or unbelievable."[20] But it must, in any

---

[16] TEX. CODE CRIM. PROC. art. 38.23(a).

[17] *Id*.

[18] *Madden*, *supra*, at 509-10.

[19] *Id*. at 510.

[20] *Garza v. State*, 126 S.W.3d 79, 85 (Tex. Crim. App. 2004).

event, raise a "*factual* dispute about how the evidence was obtained."[21]  Where the issue

raised by the evidence at trial does *not* involve controverted historical facts, but only the

proper application of the law to undisputed facts, that issue is properly left to the

determination of the trial court.[22]

---

[21]

    *Id*. (emphasis added).

[22]

    *See*, *e.g.*, *Mahaffey II*, *supra*, at 912 n.8 ("Unlike *Madden*, here there is no mistake about the historical facts.  Rather, the matter before us is the *application of the law to the facts*.") (emphasis added);  *see also Garcia v. State*, 43 S.W.3d 527, 531 (Tex. Crim. App. 2001) (In addressing the sufficiency of the facts to justify the stop in *Garcia*, we explained that the issue was an application of the law to the facts: "The question, then, is whether the child looking back several times is enough to establish reasonable suspicion for a seat belt violation.");  *Wesbrook v. State*, 29 S.W.3d 103, 121 (Tex. Crim. App. 2000) (In reviewing the defendant's claim that his cellmate violated his Sixth Amendment right to counsel by relaying to the prosecution statements the defendant made while in jail, and thus, that he was entitled to an Article 38.23 instruction on the legality of the evidence obtained, we held that "there was no dispute as to the facts surrounding the acquisition of [the cellmate's] testimony.  The only determination to be made in this case was of a legal nature, not factual.  Appellant was not entitled to the requested jury instruction.") (citation omitted).

    *See also McRae v. State*, 152 S.W.3d 739, 748 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) ("The *trial court* was . . . required to apply the law to the undisputed facts to make a legal conclusion about probable cause [to arrest the defendant for driving while intoxicated]. No jury instruction was required because there were no facts in dispute.") (emphasis added);  *Knot v. State*, 853 S.W.2d 802, 805 (Tex. App.—Amarillo 1993, no pet.) (holding that the trial court erred in failing to give the appellant's requested instruction because conflicting testimony as to whether the defendant threw a beer bottle at the complaining witness, "committ[ing] a breach of the public peace in his presence, the basis for the [complaining witness's] lawful arrest of [the defendant] . . . raised an issue of the validity of the [defendant's] arrest and the resulting seizure of evidence admitted against him at trial");  *Mills v. State*, 296 S.W.3d 843, 845 (Tex. App.—Austin 2009, pet. ref'd)  (In reviewing Mills's complaint that the trial court refused to include an Article 38.23 instruction in the jury charge, the Austin Court of Appeals explained that "[w]hether reasonable suspicion is present is a question of law for the trial court when there is no dispute concerning the existence of the underlying historical facts from which that determination is made." (citing *Madden*, *supra*, at 510-12));  *Alcocer v. State*, 256 S.W.3d 398, 399 (Tex. App.—San Antonio 2008, no pet.) ("When essential facts concerning the search or arrest are not in dispute, the legality of the search or arrest is a question of law, not fact, and no jury instruction is required.");  *White v. State*, 201 S.W.3d 233, 248-49 (Tex. App.—Fort Worth 2006, pet. ref'd) (holding that, where there was "no dispute . . . as

Unlike the court of appeals, we perceive no material *factual* dispute in this case, only a dispute among the witnesses with respect to the legal significance of what are, in essence, undisputed facts. There was certainly disagreement among the parties as to whether a driver is *legally* required to signal at this confluence of the roadways—specifically, whether the character of the curve where Ninth Street meets Margaret Drive constitutes a "turn" as contemplated under the Transportation Code, or instead simply forces motorists to "merge" with the natural flow of the direct course of traffic. But the parties did not offer conflicting testimony before the jury with regard to the *physical* character of the roadway, *viz*: that Ninth Street "continues" onto Margaret Drive. Even Muñoz agreed that Ninth Street in fact "becomes" Margaret Drive and that the two separately named streets appear to "merge" into each other to result in only a change of name. Williams's testimony as to the physical description of the roadways—testifying that Ninth Street "curves" into Margaret Drive—was consistent with the testimony from Muñoz. What Williams contested in her testimony was that this "curve . . . around the corner" would require a turn signal—a layperson's point of view on a legal question reserved for the trial court. While it may not be perfectly clear on the record precisely what the witnesses were describing, it was clear enough that their respective descriptions of the layout of the roadways were consistent. What they disagreed

---

to the *facts* upon which the exigent circumstances [to enter the defendant's home without a warrant] were determined[,]" the defendant was not entitled to an Article 38.23 instruction because "[w]hether a search is *reasonable* is a question of law" for which "*courts* should carefully apply the objective standard of reasonableness" and should "take[] into account the facts and circumstances known to the police at the time of the search") (emphasis added).

about was the legal consequences of the appellant's conduct as he continued from Ninth Street onto Margaret Drive without using his turn signal. But this disagreement was for the trial court to arbitrate, according to the law, not for the jury to determine as if it were an ambiguous or contested question of historical fact.[23]

This is not to say that a police officer's reasonable mistake of historical *fact* can never be the legitimate subject of an Article 38.23(a) instruction. A police officer's reasonable mistake about the facts may yet legitimately justify his own conclusion that there is probable cause to arrest or reasonable suspicion to detain. This is so because a mistake about the facts, *if* reasonable, will not vitiate an officer's actions in hindsight so long as his actions were lawful under the facts as he reasonably, albeit mistakenly, perceived them to be.[24] And if there is a dispute about whether a police officer was genuinely mistaken, or was not telling the truth, about a material historical fact upon which his assertion of probable cause or reasonable suspicion hinges, an instruction under Article 38.23(a) would certainly be appropriate.[25]

---

[23]
   *Garza*, *supra*, 85-88; *id*. at 86 ("That appellant 'disagrees with the *conclusion* that probable cause was shown as a matter of law' is not the same as appellant controverting the *facts*.").

[24]
   *Reynolds v. State*, 848 S.W.2d 148, 149 (Tex. Crim. App. 1993) ("If . . . the jurors believed that appellant was not in fact speeding, they would then be forced to conclude that the officer's testimony was either mistaken or incredible. And, although a conclusion that the officer was mistaken would not affect the legitimacy of his stopping appellant, a conclusion that he was lying would.").

[25]
   *See*, *e.g.*, *Holmes v. State*, 248 S.W.3d 194 (Tex. Crim. App. 2008) (providing, in example, that contested fact issues such as "that Officer Frank did not reasonably believe that the defendant

But that was not the kind of mistake at issue here.  Muñoz's testimony that the

---

was holding a garden hoe; that Officer Frank did not reasonably believe that the defendant might have been involved in a 'disturbance' with Alice Manning; [and] that Officer Frank did not reasonably believe that the defendant was attempting to evade detention by trotting or running away" would all be sufficient to entitle the defendant to an Article 38.23 instruction);  *Stone v. State*, 703 S.W.2d 652, 653 (Tex. Crim. App. 1986) (finding that a fact issue was raised concerning the officer's right to stop the defendant's vehicle when the arresting officer testified that the defendant was driving in a "hazardous manner" and weaving on the roadway, while the defendant and her passenger testified that she was driving in a "prudent manner" and was not weaving in the roadway); *Morr v. State*, 631 S.W.2d 517, 518 (Tex. Crim. App. 1982) (finding that a fact issue was created where the defendant "took the stand before the jury and denied the officer's testimony that he was driving below the 45 miles per hour minimum speed[,]" and the passenger in the car "testified before the jury that the car had not been weaving when the police stopped it[,]" as the officer testified).

In *Madden*, the jury heard testimony that the appellant, initially pulled over by the officer for speeding, stated at the scene that he was driving at the posted speed limit of 55 m.p.h. with his cruise control on, while the officer testified that the defendant was driving at 61 m.p.h. *Madden*, *supra*, at 511.  We reviewed two jury instructions on petition for discretionary review in *Madden*.  The first, ultimately submitted to the jury on the trial court's own motion, was whether the officer reasonably believed that the appellant was speeding at the time he stopped the appellant's car. *Id*.  The second instruction, originally requested by the appellant but denied by the trial court, was "whether [the officer] had 'reasonable suspicion' to continue to detain appellant." *Id*.  The submitted instruction centered on an affirmatively contested issue of historical fact—the defendant's speed—and whether the facts, as presented to the jury at trial, supported the officer's belief that Madden had been traveling at 6 m.p.h. over the posted speed limit.  *Id*.  This is distinguishable from the defendant's requested instruction, which sought to have the jury determine, based on the *totality* of the facts, whether the officer had a "reasonable suspicion"—a legal term of art—to detain Madden for a traffic violation. *Id*. at 511-14.  Thus, while it was proper for the jury to resolve the contested factual issue of the defendant's actual speed, in miles per hour, it would not have been proper for the jury to resolve the broader legal question of whether the defendant's speed, *if* it *exceeded* the posted speed limit, gave the officer legal justification to pull the defendant over for the traffic violation of *speeding*. *Id*. at 511 (emphasis added).  By submitting to the jury a question of fact concerning the officer's belief—i.e. whether his testimony as to the defendant's speed was truthful or, on the other hand, might be seen by the jury as fabricated—the jury was asked to determine the credibility of the witnesses and choose which witness's recitation of the facts it believed. *See also Mahaffey II*, *supra*, at 912 n.8 ("[T]his Court has never addressed whether an officer's reasonable interpretation of the *law*, if ultimately mistaken, can serve as an objectively reasonable basis upon which to effectuate a stop.  * * *  In *Madden v. State*, we explained that the pertinent issue was 'not whether appellant *was* speeding,' but whether the officer 'had a reasonable belief that he was speeding.  Even police officers may be mistaken about an historical fact such as "speeding," as long as that mistake was not unreasonable.'") (emphasis added).

appellant was required to use a turn signal at the point at which Ninth Street merged into Margaret Drive was not a mistake about an historical fact which, if reasonable, would justify the traffic stop. Rather, it was an assertion of what he believed to be the legal significance of the merger—an opinion about the proper application of law to the undisputed historical facts. But Muñoz was not entitled to be mistaken, *even if* reasonably so, about the legal consequences of the appellant's conduct as he approached Margaret Drive. An officer's mistake about the law, or about the legal significance of undisputed facts, *even if* eminently reasonable, cannot serve to provide probable cause or reasonable suspicion; it cannot, in other words, validate an otherwise invalid seizure.[26] Only the judge is authorized to determine the legal significance of the material facts in the case and how they affect the ultimate conclusion regarding the existence, *vel non*, of probable cause or reasonable suspicion.[27] The only disagreement in this case was not about the character of the roadway,

---

[26]

*See*, *e.g.*, *Robinson*, supra, at *3 (The court of appeals recognized that "mistakes of fact are rarely fatal to an officer's reasonable, articulable belief that an individual was violating a traffic ordinance at the time of a stop," whereas "mistakes of law—even reasonable ones—can render a traffic stop 'unreasonable' under the Fourth Amendment." (quoting *United States v. Delfin-Colina*, 464 F.3d 392, 398 (3d. Cir. 2006) (rejecting the defendant's argument that "a mistake of law by the seizing officer will render a traffic stop *per se* unreasonable under the Fourth Amendment")); *United States v. Miller*, 146 F.3d 274, 277-279 (5th Cir. 1998) (holding that when the "sole theory of probable cause" was based on an act that the court found was "not a violation of Texas law, no objective basis for probable cause justified the stop of" the defendant); *Vicknair v. State*, 751 S.W.2d 180, 190 (Tex. Crim. App. 1988) (opinion on reh'g) (finding that the officer's "inarticulate hunch, suspicion, or good faith belief" about the law was not sufficient to support probable cause where "the sole reason" the officer gave for stopping the defendant's vehicle was that he "believed" the defendant had committed a traffic "infraction" that the court ultimately determined was not a violation of the relevant statute).

[27]

*Cf. State v. Sheppard*, 271 S.W.3d 281, 291 (Tex. Crim. App. 2008) ("[F]actual findings are

but about the legal significance of the character of the roadway. The question whether the appellant was required to use his turn signal was therefore a question of law, not fact, and the admissibility of any evidence that Muñoz obtained as a result of the traffic stop does not depend on the reasonableness of his *belief* that the appellant was legally required to signal. The appellant was not entitled to an Article 38.23(a) instruction that the jury must disregard that evidence in the event it should find that Muñoz's belief was unreasonable.

## DISPOSITION

We hold that the court of appeals erred to conclude that the appellant was entitled to an Article 38.23(a) jury instruction since there was no dispute about the material historical facts. The only dispute was about the legal significance of those facts—a dispute that juries are not authorized to resolve. We therefore reverse the judgment of the court of appeals.

Ordinarily with a case in this posture, we would simply reinstate the judgment of the trial court. In the instant case, however, there is a wrinkle. In disposing of the appellant's interrelated first point of error, the court of appeals held that the trial court did not abuse its discretion in denying the appellant's motion to suppress. Having perceived that "[t]he issue is whether the traffic of Ninth Street **merges** onto Margaret or whether the traffic from Ninth Street **turns** onto Magaret[,]"[28] and even after taking into account the evidence that was

---

who did what, when, where, how, or why. They also include credibility determinations. They do not include legal rulings on 'reasonable suspicion' or 'probable cause'; those are legal conclusions subject to *de novo* review, not deference.").

[28] *Robinson*, *supra*, at *4.

presented during the trial on the merits as well as at the hearing on the motion to suppress,[29]

the court of appeals concluded that,

> [w]hile the record contains strong evidence that Ninth Street and Margaret
> Drive merged and that [the appellant] merely followed the direct course of the
> road, the evidence does not conclusively establish that a reasonable officer
> would have concluded Ninth Street and Margaret Drive merged and [the
> appellant] merely followed the direct course of the road. We are required to
> afford 'almost total deference to a trial court's determination of the historical
> facts.' *Guzman* [*v. State*], 955 S.W.2d [85,] at 89 [(Tex. Crim. App. 1997)].
> We are unable to conclude the trial court erred in denying [the appellant's]
> motion to suppress.[30]

To the extent that this holding is contingent on a conclusion that the record presents an actual

dispute with respect to material historical *facts*, it is at odds with our conclusion today that

the record admits of nothing more than a dispute about the legal significance of those

historical facts. Appellate courts may review the legal significance of undisputed facts *de

novo*.[31] Under these circumstances, we think it appropriate to remand the cause to the court

of appeals for further consideration of the appellant's first point of error.[32] The court of

---

[29]

*Id*. at *5 n.4 (explaining that it is appropriate, in reviewing propriety of trial court's ruling
on a motion to suppress, also to consider relevant evidence presented during trial itself where "the
legality of the seizure is relitigated at trial," citing *Rachel v. State*, 917 S.W.2d 799, 809 (Tex. Crim.
App. 1996)).

[30]

*Id*. at *5

[31]

*Sheppard*, *supra*.

[32]

The court of appeals seems to have perceived at least an *ambiguity* in the record with respect
to the character of the intersection of Ninth Street and Margaret Drive. *Id*. It is true that, at the
outset of the hearing on the appellant's motion to suppress, Muñoz testified: "I was at Eighth and
Margaret, and I observed the vehicle that was being driven by [the appellant] on Ninth and Margaret,

appeals may exercise its discretion to order additional briefing from the parties.[33]

DELIVERED:          September 19, 2012
PUBLISH

---

and I observed [that] the vehicle failed to make a – use a turn signal at that time when it turned onto Margaret from Ninth." Sensing ambiguity in the factual record, the court of appeals regarded it as appropriate under *Guzman* to defer to the trial court as the institutional fact-finder. But it is evident from the balance of the record, both at the suppression hearing and at trial, that Muñoz's testimony at the beginning of the suppression hearing is more reflective of his opinion about the legal significance of the failure to use a turn signal where Ninth Street and Margaret Drive meet than a factual description of the intersection itself. Arguably the trial court should have reconsidered its original ruling on the appellant's motion to suppress in light of the later testimony at both the motion to suppress hearing and at trial—just as the appellant requested the trial court to do during the jury charge conference. The court of appeals was not required to defer to Muñoz's opinion with respect to the legal significance of the historical facts. *Sheppard*, *supra*. Whether Muñoz's opinion was ultimately correct, we leave for the court of appeals to ponder in its further consideration of the appellant's first point of error on remand.

[33]    Neither the trial court in its ruling on the motion to suppress nor the court of appeals in its holding on this issue had the benefit of our recent decision in *Mahaffey II*. *See* note 16, *ante*.