

# IN THE
# TENTH COURT OF APPEALS

### No. 10-12-00279-CR

**ARRON THOMPSON,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

### From the 40th District Court
### Ellis County, Texas
### Trial Court No. 35783CR

## MEMORANDUM  OPINION

In three issues, appellant, Arron Thompson, challenges his conviction for evading arrest with a prior conviction, a state-jail felony. *See* TEX. PENAL CODE ANN. § 38.04(a), (b)(1)(A) (West Supp. 2012).  We affirm.

### I.  BACKGROUND

City of Ennis Police Officer Brian Clark was on patrol at about 9:00 p.m. on November 6, 2010, when he received a dispatch to report to an apartment complex in Ennis, Texas.  When he arrived at the apartment complex, Officer Clark saw "several

subjects were in the parking lot pointing at the vehicle that was passing as I was pulling in saying that he's in that car." Officer Clark turned around and initiated a traffic stop of the vehicle that was identified. On this evening, Officer Clark was driving a marked police car and was wearing his uniform that had a badge and distinctive patches identifying him as a police officer. Officer Clark stopped the vehicle a few hundred feet from the apartment complex, and he identified appellant as a passenger in the vehicle. Appellant stayed inside the vehicle until another police officer—Corporal Brad Sherrard of the Ennis Police Department—arrived.

Corporal Sherrard, also driving a marked police car and wearing his police uniform, responded to the apartment complex based on a report of a possible criminal trespass. Corporal Sherrard spoke with the reporting parties in the parking lot of the apartment complex. The reporting parties stated that someone entered their apartment without their consent and described the perpetrator as wearing a "white beater" or "wife beater" with dark pants and a "doo rag" on his head. A video of Corporal Sherrard's interview of the reporting parties was admitted into evidence.

After speaking with the reporting parties, Corporal Sherrard went to the location where Officer Clark had stopped the vehicle in which appellant was a passenger. Corporal Sherrard requested that appellant exit the vehicle so that he could ask him a few questions. Corporal Sherrard subsequently read *Miranda* warnings to appellant because,

> [d]ue to his clothing description. He best matched the description given by the reporting party, the complainant, so we wanted to speak with him further about the offense or incident in question. So I read him his

*Miranda* rights because, at that point in my mind, he had become a suspect for the trespass.[1]

Corporal Sherrard denied that appellant was under arrest at this point and that he simply wanted to ask appellant a few questions about the incident. No testimony indicated that either Corporal Sherrard or Officer Clark informed appellant that he was a suspect at that time. In the middle of the *Miranda* warnings, appellant "took off running." Police chased appellant for four city blocks until they eventually apprehended him.

Appellant was charged by indictment with evading arrest with a prior conviction for evading arrest on September 15, 1999. The case proceeded to trial before a jury. After the jury was selected by appellant's court-appointed attorney, appellant informed the trial court that he wished to exercise his right to self-representation. The trial court admonished appellant regarding the dangers and disadvantages of self-representation, but appellant insisted that he wanted to represent himself for the remainder of the trial, though standby counsel was present outside the courtroom. At the conclusion of the trial, the jury found appellant guilty of the charged offense and sentenced him to 730 days in state-jail facility with a $10,000 fine. This appeal followed.[2]

---

[1] On cross-examination, Corporal Sherrard acknowledged that appellant was not wearing a sleeveless shirt when he was questioned and admitted that appellant did not "fit the description to a T." However, Corporal Sherrard noted that appellant was wearing dark pants, a white shirt, a red "doo rag" on his head, and a white multicolored jacket on the night in question. In his cross-examination of Corporal Sherrard, appellant emphasized that he did not fit the description provided of the perpetrator because he was not wearing a white, sleeveless shirt.

[2] Appellant filed his pro se notice of appeal on July 23, 2012. Despite several warnings, appellant filed several other documents in this Court without serving the items on all parties to the appeal. *See* TEX. R. APP. P. 9.5. We therefore abated the appeal to the trial court to conduct any necessary hearings for a determination of appellant's indigence and whether counsel should be appointed. The trial court

## II.      SUFFICIENCY OF THE EVIDENCE

In his first issue, appellant challenges the sufficiency of the evidence supporting his conviction.  Specifically, appellant argues that the evidence contained in the record is insufficient to establish that his detention or arrest was lawful.

### A.      Applicable Law

In reviewing the sufficiency of the evidence to support a conviction, we view all the evidence in a light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012); *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (plurality op.).  If the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination.  *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2792-93.  The factfinder is entitled to judge the credibility of witnesses and can choose to believe all, some, or none of the testimony presented by the parties.  *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).  A factfinder is permitted to draw reasonable inferences from the facts as long as they are supported by the evidence presented at trial.  *Merritt*, 368 S.W.3d at 525.

The sufficiency of the evidence is measured by reference to the elements of the offense as defined by a hypothetically-correct jury charge for the case.  *Malik v. State*,

---

conducted a hearing and determined that counsel should be appointed to represent appellant on appeal. Thus, appellant is represented by counsel in this matter.

953 S.W.2d 234, 240 (Tex. Crim. App. 1997). "A person commits an offense if he intentionally flees from a person he knows is a peace officer . . . attempting lawfully to arrest or detain him." TEX. PENAL CODE ANN. § 38.04(a). The offense is a state-jail felony if the actor has been previously convicted of evading arrest or detention, which was the case here. *Id.* § 38.04(b)(1)(A). In his first issue, appellant only disputes the sufficiency of the evidence to prove that the arrest or detention was lawful. Specifically, appellant contends that the officers did not have reasonable suspicion to detain him or probable cause to arrest him.

The Texas Court of Criminal Appeals has recognized three distinct categories of interactions between police officers and citizens: (1) encounters; (2) investigative detentions; and (3) arrests. *State v. Perez*, 85 S.W.3d 817, 819 (Tex. Crim. App. 2002). Courts look to the totality of the circumstances to determine into which category an interactions falls. *Crain v. State*, 315 S.W.3d 43, 49 (Tex. Crim. App. 2010).

An investigatory detention occurs when a person yields to an officer's show of authority under a reasonable belief he is not free to leave. *Id.* The inquiry is whether a reasonable person in the citizen's position would have felt free to decline the officer's requests or otherwise terminate the encounter. *Id.* "[A] police officer can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *Woods v. State*, 956 S.W.2d 33, 35 (Tex. Crim. App. 1997) (quoting *Terry v. Ohio*, 392 U.S. 1, 29, 88 S. Ct. 1868, 1884, 20 L. Ed. 2d 889 (1968)). This is an objective standard that disregards any subjective intent of the detaining officer and

looks solely to whether an objective basis for the detention exists. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). When an officer subjects a defendant to an investigatory detention, it is the State's burden to prove the reasonableness of the warrantless detention. *Id.*

Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude a particular person actually is, has been, or soon will be engaged in criminal activity. *Castro v. State*, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007). Whether reasonable suspicion exists depends on the content of the information known to the officer as well as its degree of reliability. *Martinez v. State*, 348 S.W.3d 919, 923 (Tex. Crim. App. 2011). The State need not, however, establish that a crime actually occurred prior to the investigatory detention. *Id.* In determining what constitutes reasonable suspicion, a court may look only at those facts known to the officer at the inception of the detention, and a detention or search unlawful at its inception may not be validated by what it turns up. *State v. Griffey*, 241 S.W.3d 700, 704 (Tex. App.—Austin 2007, pet. ref'd); *see Florida v. J.L.*, 529 U.S. 266, 271, 120 S. Ct. 1375, 1379, 146 L. Ed. 2d 254 (2000) ("The reasonableness of official suspicion must be measured by what the officers knew before they conducted their search."). The reasonableness of a temporary detention is examined in terms of the "totality of the circumstances" at its inception. *See Woods*, 956 S.W.2d at 38. Individual circumstances must not be considered in isolation, and the facts known to the officer must amount to something more than an inchoate and unparticularized suspicion or hunch. *Id.* at 35. Moreover, the *Woods* Court recognized

that "there may be instances when a person's conduct viewed in a vacuum, appears purely innocent, yet when viewed in light of the totality of the circumstances, those actions give rise to reasonable suspicion." *Id.* at 38.

There is no requirement that the "facts adduced to give rise to a reasonable suspicion must show that the detainee has committed, is committing, or is about to commit, a particular and distinctively identifiable penal offense." *Derichsweiler v. State*, 348 S.W.3d 906, 916 (Tex. Crim. App. 2011). The *Derichsweiler* Court explained that:

> Unlike the case with probable cause to justify an arrest, it is not a *sine qua non* of reasonable suspicion that a detaining officer be able to pinpoint a particular penal infraction. The reason is simple but fundamental. A brief investigative detention constitutes a significantly lesser intrusion upon the privacy and integrity of the person than a full-blown custodial arrest. For this reason, a warrantless investigative detention may be deemed "reasonable" for Fourth Amendment purposes on the basis of a lesser quantum or quality of information—reasonable suspicion rather than probable cause. Likewise, because a detention is less intrusive than an arrest, the specificity with which the articulable information known to the police must demonstrate that a particular penal offense has occurred, is occurring, or soon will occur, is concomitantly less. It is, after all, only an "investigative" detention. So long as the intrusion does not exceed the legitimate scope of such a detention and evolve into the greater intrusiveness inherent in an arrest-*sans*-probable-cause, the Fourth Amendment will tolerate a certain degree of police proaction.

*Id.* at 916-17 (internal footnotes omitted) (emphasis in original); *see Woodward v. State*, 668 S.W.2d 337, 344 (Tex. Crim. App. 1987) (op. on reh'g) (noting that probable cause is to be evaluated by the court on the basis of the collective information of the police rather than that of only the officer who conducts the search or performs the act of arresting).

**B. Discussion**

On appeal, appellant argues that: (1) Officer Clark did not testify to specific, articulable facts upon which a temporary detention of appellant for further investigation was justified; (2) the detention was longer than necessary to dispel Officer Clark's suspicions; and (3) he was unlawfully arrested at the time he fled from police.

**1. Temporary Detention**

The evidence adduced at trial shows that Officer Clark was dispatched to an apartment complex in Ennis, and upon arrival, he was directed by several witnesses to a car that was leaving the location. Appellant was a passenger of the car that was identified by several witnesses and eventually stopped by Officer Clark. Corporal Sherrard testified that the dispatch involved a possible criminal trespass at the apartment complex. We recognize that Corporal Sherrard acknowledged that appellant's clothing did not match the clothing description provided by witnesses "to a T." However, witnesses stated that appellant was wearing a white shirt, dark pants, and a "doo rag" on this head—all of which closely matched the clothing appellant was wearing at the time of the stop. In any event, it is within the discretion of the factfinder—the jury—to resolve any conflicts in the testimony, and we are to defer to the jury's resolution of such conflicts. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2792-93; *see also Chambers*, 805 S.W.2d at 461. Clearly, by convicting appellant of the charged offense, the jury resolved the conflict in the evidence against appellant.

And as we stated above, reasonable suspicion can be based on the collective information of the police rather than that of only the officer who conducts the search or performs the act of arresting. *See Derichsweiler*, 348 S.W.3d at 914 ("Moreover, the detaining officer need not be personally aware of every fact that objectively supports a reasonable suspicion to detain; rather, the cumulative information known to the cooperating officers at the time of the stop is to be considered in determining whether reasonable suspicion exists." (internal quotations & footnotes omitted)); *see also Woodward*, 668 S.W.2d at 344. Therefore, considering the knowledge of both Officer Clark and Corporal Sherrard in addition to the totality of the circumstances, we conclude that the record contains sufficient, articulable facts that give rise to reasonable suspicion that appellant was involved in criminal activity and, thus, supports the temporary detention of appellant. *See State v. Kerwick*, 393 S.W.3d 270, 2013 Tex. App. LEXIS 430, at **6-7 (Tex. Crim. App. Feb. 27, 2013) (citing *Martinez*, 348 S.W.3d at 923; *York v. State*, 342 S.W.3d 528, 536 (Tex. Crim. App. 2011)); *see also Castro*, 227 S.W.3d at 741.

## 2. The Length of the Temporary Detention

Appellant also argues that the temporary detention lasted longer than necessary to confirm or dispel Officer Clark's suspicions. Appellant's argument hinges upon a finding that he should have been immediately released once it became apparent that he did not match the description of the perpetrator provided by witnesses. Because we have already concluded that reasonable suspicion existed to support the temporary detention, we reject this argument. Furthermore, we note that nothing in the record

indicates that the temporary detention was longer than necessary to complete the purpose of the detention.[3] *See Kothe v. State*, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004) (noting that an "investigative stop can last no longer than necessary to effect the purpose of the stop").

### 3. Whether Appellant Was Under Arrest at the Time He Fled

And finally, appellant argues that he was unlawfully arrested at the time he fled from police. Specifically, appellant contends that his liberty was restricted when he fled and that the police did not have probable cause to arrest him at that time. We disagree.

Determining when police have placed a defendant in custody is to be determined "on an ad hoc basis, after considering all of the (objective) circumstances." *Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996) (citing *Shiflet v. State*, 732 S.W.2d 622, 629 (Tex. Crim. App. 1985)). In making that determination, courts are to determine whether a reasonable person, given all of the objective circumstances, would have perceived the detention to have been a restraint on movement "comparable to . . . formal arrest[.]" *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012).

Nevertheless, if the answers of the person being interviewed by police give the police probable cause to arrest the person being interviewed, an interview that began as an investigative detention can change into a custodial interrogation. *See Dowthitt*, 931 S.W.2d at 255. A noncustodial interrogation can become a custodial interrogation if, during the interview, the suspect's freedom to leave is restricted to the degree

---

[3] Appellant admits in his brief that he had been detained for approximately 10 minutes when Corporal Sherrard requested that he exit the car.

associated with an arrest and the restrictions on the suspect's movements are created by law enforcement officers, the suspect is told he cannot leave, or the police create a situation that would make a reasonable person who was innocent believe that his freedom of movement is significantly restricted. *Id.*

Appellant asserts that he was under arrest when Corporal Sherrard began asking him questions, ordered him to take his hands out of his pockets, and provided *Miranda* warnings after requesting that he exit the vehicle and finish a telephone call. A video of the interaction was admitted into evidence, and nothing on the video would demonstrate to a reasonable person that his freedom of movement was significantly restricted. In fact, any argument suggesting that appellant's freedom of movement was significantly restricted is severely undermined by the fact that appellant fled from police for four city blocks. Furthermore, appellant was not placed in handcuffs, nor did the officers tell appellant that he could not leave. *See State v. Sheppard*, 271 S.W.3d 281, 289 (Tex. Crim. App. 2008) (explaining that the use of handcuffs does not automatically convert a temporary detention into a Fourth Amendment arrest). Thus, at the time in which he fled, appellant was subject to a temporary detention.

And to the extent that appellant argues that Corporal Sherrard's act of reading appellant his *Miranda* rights amounted to a formal arrest, we note that the Texas Court of Criminal Appeals has emphasized that, in making the custody determination, the primary question is whether a reasonable person would perceive the detention to be a restraint on his movement comparable to formal arrest, given all the objective circumstances. *Ortiz*, 382 S.W.3d at 372. In evaluating whether a reasonable person

would believe his freedom has been restrained to the degree of formal arrest, courts look only to the objective factors surrounding the detention. *Id.* The subjective beliefs of the detaining officer are not included in the calculation of whether a suspect is in custody. *Id.* at 372-73. But if the officer manifests his belief to the detainee that he is a suspect, then that officer's subjective belief becomes relevant to the determination of whether a reasonable person in the detainee's position would believe he is in custody. *Id.* at 373.

Once again, we note that appellant's freedom of movement was not restrained. Furthermore, nowhere in the record or on the accompanying video do police indicate that appellant was not free to leave. Moreover, the record does not reflect that either Officer Clark or Corporal Sherrard informed appellant that he was a suspect at the time he fled.[4] Therefore, we cannot say that a reasonable person would perceive appellant's detention to be a restraint on his movement comparable to a formal arrest after considering all the objective circumstances. *See id.*

Based on the foregoing, we overrule appellant's first issue.

### III.    THE JURY CHARGE

In his second and third issues, appellant complains about the jury charge. Specifically, appellant contends that the failure to include definitions for "lawful detention" and "lawful arrest" and an instruction pursuant to article 38.23(a) of the

---

[4] We recognize that Corporal Sherrard testified that he believed appellant to be a suspect once he determined that appellant's clothing matched the description provided by witnesses. However, the record does not reflect that Corporal Sherrard told appellant that he was a suspect; therefore, Corporal Sherrard's subjective belief that appellant was a suspect is irrelevant to the determination as to whether appellant was in custody. *See State v. Ortiz*, 382 S.W.3d 367, 372-73 (Tex. Crim. App. 2012).

Texas Code of Criminal Procedure caused him egregious harm; thus, his conviction should be reversed and remanded for a new trial.

## A.    Standard of Review

In reviewing a jury-charge issue, an appellate court's first duty is to determine whether error exists in the jury charge. *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996). If error is found, the appellate court must analyze that error for harm. *Middleton v. State*, 125 S.W.3d 450, 453-54 (Tex. Crim. App. 2003). If an error was properly preserved by objection, reversal will be necessary if the error is not harmless. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). Conversely, if error was not preserved at trial by a proper objection, a reversal will be granted only if the error presents egregious harm, meaning appellant did not receive a fair and impartial trial. *Id.* To obtain reversal for jury-charge error, appellant must have suffered actual harm and not just merely theoretical harm. *Sanchez v. State*, 376 S.W.3d 767, 775 (Tex. Crim. App. 2012); *Arline v. State*, 721 S.W.2d 348, 352 (Tex. Crim. App. 1986).

Appellant admits that he did not object to the jury charge, nor did he request the aforementioned definitions or article 38.23(a) instruction; thus, he must show egregious harm. *See Almanza*, 686 S.W.2d at 171. In examining the record for egregious harm, we consider the entire jury charge, the state of the evidence, the final arguments of the parties, and any other relevant information revealed by the record of the trial as a whole. *Olivas v. State*, 202 S.W.3d 137, 144 (Tex. Crim. App. 2006). Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a

valuable right, or vitally affects a defensive theory. *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007); *Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006).

**B.      Applicable Law**

The trial court must provide the jury with "a written charge distinctly setting forth the law applicable to the case." TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007). Moreover, the trial court may not express "any opinion as to the weight of the evidence." *Id.*; *see Walters v. State*, 247 S.W.3d 204, 208 (Tex. Crim. App. 2007). Because "[j]uries are free to consider and evaluate the evidence in whatever way they consider it relevant to the statutory offenses, special, non-statutory instructions, even when they relate to statutory offenses or defense, generally have no place in the jury charge." *Kirsch v. State*, 357 S.W.3d 645, 652 (Tex. Crim. App. 2012) (internal quotations omitted).

**C.      Discussion**

Here, the language in the charge tracks the language of section 38.04(a) of the Texas Penal Code—the governing criminal statute in this case. TEX. PENAL CODE ANN. § 38.04(a); *see Riddle v. State*, 888 S.W.2d 1, 8 (Tex. Crim. App. 1994) ("A jury charge which tracks the language of a particular statute is a proper charge on a statutory issue."); *see also Martinez v. State*, 924 S.W.2d 693, 699 (Tex. Crim. App. 1996). The definitions mentioned by appellant on appeal are special, non-statutory instructions that were not required in the charge. *See Kirsch*, 357 S.W.3d at 652. Furthermore, appellant does not explain what definitions could have been included in the charge to aid the jury's understanding.

Moreover, the record indicates that appellant chose to forego representation at trial and represent himself. While appellant attempted to assert a defensive theory that the detention was unlawful because he did not match the clothing description provided by witnesses, he did not object to the charge and he did not request additional instructions in the charge. This is but one of the potential dangers associated with self-representation. We note that courts have held that parties advancing pro se are held to the same standards as licensed attorneys and that a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of effective assistance of counsel. *See Johnson v. State*, 760 S.W.2d 277, 279 (Tex. Crim. App. 1988) (noting that pro se litigants are held to the same standards as a licensed attorney and are not granted any special consideration); *see also Farretta v. California*, 422 U.S. 806, 834 n.46, 95 S. Ct. 2525, 2541, 45 L. Ed. 2d 562 (1975). Based on our review of the record, and given the fact that the charge language tracked section 38.04 of the Texas Penal Code, we do not believe that the failure to include the special definitions mentioned by appellant on appeal rendered the charge erroneous.

Appellant also argues that the trial court should have sua sponte provided an article 38.23(a) instruction in the charge. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23(a). Under article 38.23(a), "[n]o evidence obtained by an officer . . . in violation of any provisions of the Constitution or laws . . . shall be admitted in evidence against the accused" at trial. *Id.*; *see Robinson v. State*, 377 S.W.3d 712, 719 (Tex. Crim. App. 2012). "When evidence presented before the jury raises a question of whether the fruits of a police-initiated search or arrest were illegally obtained, 'the jury shall be instructed that

if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.'" *Robinson*, 377 S.W.3d at 719 (quoting TEX. CODE CRIM. PROC. ANN. art. 38.23(a)). In *Madden v. State*, the Texas Court of Criminal Appeals held that, to be entitled to an article 38.23 instruction, the defendant must show that: (1) an issue of historical fact was raised in front of the jury; (2) the fact was contested by affirmative evidence at trial; and (3) the fact is material to the constitutional or statutory violation that the defendant has identified as rendering the particular evidence inadmissible. 242 S.W.3d 504, 509-10 (Tex. Crim. App. 2007).

When a disputed, material issue of fact is raised successfully, the terms of article 38.23 are mandatory, and the jury must be instructed accordingly. *Id.* at 510. Evidence to justify an article 38.23 instruction can derive "from any source," no matter whether "strong, weak, contradicted, unimpeached, or unbelievable." *Garza v. State*, 126 S.W.3d 79, 85 (Tex. Crim. App. 2004). However, such evidence must raise a "factual dispute about how the evidence was obtained." *Id.* "Where the issue raised by the evidence at trial does not involve controverted historical facts, but only the application of the law to undisputed facts, that issue is properly left to the determination of the trial court." *Robinson*, 377 S.W.3d at 719.

At trial, appellant emphasized that he was not wearing a sleeveless shirt on the night in question. Corporal Sherrard admitted that appellant did not fit the description provided by witnesses "to a T." Apparently, on appeal, appellant argues that the jury should have been instructed that, if they did not believe that he was wearing a

sleeveless shirt under his jacket on the night in question, then the detention was unlawful and the jury should have been provided an article 38.23 instruction. We do not find this distinction to rise to the level of a material fact issue.

As stated earlier, there was ample evidence supporting the officers' reasonable-suspicion determination. First, the witnesses to the alleged criminal trespass pointed to the car in which appellant was a passenger and informed Officer Clark that the perpetrator of the criminal trespass was inside that vehicle. Further, witnesses recounted that the perpetrator was wearing a "white beater" or "wife beater" (i.e., a white shirt), dark pants, and a "doo rag" on his head. When appellant was stopped, officers noticed that he was wearing a white shirt, dark pants, and a "doo rag" on his head. And when pressed, Corporal Sherrard agreed that appellant did not appear to be wearing a sleeveless shirt at the time of the stop, though the video of the stop demonstrated that appellant was wearing a jacket when speaking to Corporal Sherrard. We do not find appellant's distinction between a sleeveless white shirt and a white shirt with sleeves to be significant as to be material and necessitate an article 38.23 instruction. *See Madden*, 242 S.W.3d at 510; *see also Robinson*, 377 S.W.3d at 719-20.

In any event, even if it was error for the trial court not to include an article 38.23 instruction in the jury charge, after examining the entire jury charge, the state of the evidence, final arguments of the parties, and other relevant information, we fail to see how the absence of an article 38.23 instruction in the charge was egregiously harmful in this case, which involved the prosecution of appellant for evading arrest. *See Stuhler*, 218 S.W.3d at 719; *Sanchez*, 209 S.W.3d at 121; *Olivas*, 202 S.W.3d at 144.

Based on the foregoing, we do not believe that an article 38.23 instruction was required because we have concluded that the officers had reasonable suspicion to detain appellant and because appellant has not directed us to a material fact dispute regarding how any evidence was obtained. *See Madden*, 242 S.W.3d at 510; *see also Robinson*, 377 S.W.3d at 719-20. And to the extent that it was error to not include an article 38.23 instruction in the charge, we conclude that such error, if any, was not egregiously harmful. *See Stuhler*, 218 S.W.3d at 719; *Sanchez*, 209 S.W.3d at 121; *Olivas*, 202 S.W.3d at 144. Accordingly, we overrule appellant's second and third issues.

## IV.   CONCLUSION

Having overruled all three of appellant's issues on appeal, we affirm the judgment of the trial court.

AL SCOGGINS
Justice

Before Chief Justice Gray,
    Justice Davis, and
    Justice Scoggins
Affirmed
Opinion delivered and filed May 30, 2013
Do not publish
[CR25]