MODIFY, REFORM, and AFFIRM; and Opinion Filed March 27, 2013.



In The

# Court of Appeals
# Fifth District of Texas at Dallas

No. 05-12-00360-CR

## ELMER O. SALMERON, Appellant
## V.
## THE STATE OF TEXAS, Appellee

On Appeal from the 194th Judicial District Court
Dallas County, Texas
Trial Court Cause No. F11-00773-M

## OPINION

Before Justices FitzGerald, Fillmore, and Evans
Opinion by Justice Fillmore

A jury convicted Elmer O. Salmeron of delivery of more than 400 grams of a controlled substance and assessed punishment of fifteen years' imprisonment and a $15,000 fine. In one issue, Salmeron asserts he received ineffective assistance of counsel because his trial counsel failed to request that a limiting instruction be included in the jury charge. We modify the trial court's judgment to reflect the correct offense of which Salmeron was convicted and the correct name of Salmeron's trial counsel. As modified, we affirm the trial court's judgment.

1

## Background[1]

As part of "Operation Starlight," an investigation into illegal drug sales, Dallas police officers Andrew Ortiz and Noel Carrasco arranged to meet Edwin Benitez on September 28, 2010 at his apartment to negotiate the purchase of a kilogram of cocaine and a kilogram of methamphetamine. Salmeron, who was in the apartment with Benitez when Ortiz and Carrasco arrived, introduced himself to the officers as "Flaco" and participated in the conversation. Carrasco secretly recorded the negotiations, which were conducted partially in English and partially in Spanish. Ortiz, Carrasco, and Benitez[2] all testified that Salmeron was a party to the negotiations and agreed to play a role in the drug transaction. Salmeron denied any involvement in the drug transaction and testified he was at the apartment only to have a discussion with Benitez concerning an unpaid electric bill.

After the officers agreed to a price for the drugs, Benitez proposed the transactions be handled separately, with the methamphetamine purchase to occur first. Benitez also proposed that the methamphetamine be delivered at a nearby car wash while the money was simultaneously delivered to the apartment. Benitez and Ortiz agreed they would meet at the car wash. After Ortiz saw the methamphetamine, he would call Carrasco, and Carrasco would meet Salmeron at the apartment to count the money.

The methamphetamine transaction was ultimately scheduled for October 4, 2010. Ortiz met Benitez at the car wash, and Carrasco parked in the vicinity of the apartment so that he could identify Salmeron to the response team. Benitez had 982 grams of methamphetamine in a

---

[1] Salmeron has not challenged the sufficiency of the evidence to support the conviction. Therefore, we recite only those facts necessary to address his complaint on appeal.

[2] In a separate case, Benitez pleaded guilty to the charges against him, but had not yet been sentenced.

Tupperware container in the front seat of his car. After Ortiz saw the methamphetamine, he notified SWAT officers to arrest Benitez and to search the apartment.

Dallas police officers Keith Tyler and Terrell McNeil were conducting surveillance on Benetiz's apartment. They saw Salmeron drive a white Cadillac into the apartment complex and then go into the apartment. Salmeron came out of the apartment with a white plastic bag in his hand, placed the bag into the backseat of the Cadillac, went back upstairs, and stood on the balcony outside the apartment talking on a cellphone. Salmeron then came downstairs and was arrested in the parking lot. Tyler searched the car and found a homemade press, commonly used to compress cocaine, in the white bag in the backseat of the car. During the search of the apartment, the police found three guns, a lease for the apartment in Salmeron's name, and paperwork relating to drug transactions.

Ortiz, Carrasco, Tyler, and McNeil all testified about whether there was a warrant to arrest Salmeron and a warrant to search the apartment. The arrest warrant for Salmeron and the search warrant for the apartment were issued by the magistrate on October 4, 2010.[3] Further, the affidavit in support of the arrest warrant indicates it was subscribed and sworn to before the magistrate by Ortiz on October 4, 2010. The evidentiary affidavit completed by Ortiz in support of the search warrant has "Oct 04 2010" stamped under Ortiz's name, but states that it was subscribed and sworn to before the magistrate on October 29, 2010. Further, an intelligence report of activities in Operation Starlight states the warrants were obtained on October 10, 2010.

Ortiz and Carrasco testified that, on October 4th, they obtained a search warrant for the apartment, a seizure warrant for Benitez's car, which had been used in prior drug transactions between Benitez and Ortiz, and arrest warrants for Salmeron and Benitez. Ortiz testified the

---

[3] The arrest warrant and the search warrant were admitted, without objection, for record purposes only. The officers were questioned about the dates on the warrants.

search and arrest warrants were signed on October 4th, not October 10th, and the October 10th date in the intelligence report was incorrect. According to Carrasco, the October 10th date in the Operation Starlight report "could possibly have been a typo on a date." Carrasco was adamant that "it did not happen on the 10th. It happened on the 4th." Carrasco speculated that the magistrate signed the search warrant affidavit on October 29th because that was the date he "actually approved and reviewed each document." Carrasco testified "that's what I'm guessing happened because I do know that we went and visited with him and he reviewed each document before it was signed" and that he believed "that's why the stamp is there for October 4th." Carrasco testified he found out Salmeron's true identity on the day of his arrest, October 4th. However, he was not the affiant on the arrest warrant and did not know how Salmeron was identified for purposes of the arrest warrant. Ortiz, the affiant on the arrest warrant, was not questioned about how he identified Salmeron.

Tyler testified there was a search warrant for the apartment. McNeil testified there was an arrest warrant "for the individual associated with that apartment" and it was his job to notify the "takedown team" of any person coming and going from that apartment so that the person could be detained and possibly identified as the individual subject to the arrest warrant. According to McNeil, there was also a search and seizure warrant for the Cadillac.

After the State rested its case in chief, the trial court held a hearing to consider a "suppression issue" raised by Salmeron's trial counsel. Trial counsel initially requested "a limiting instruction as to the admission of the arrest warrant and everything." The prosecutor responded that the arrest warrant and the search warrant had been admitted for record purposes only. Salmeron's trial counsel indicated he believed the warrants had been admitted for all purposes. The prosecutor also argued there was nothing to suppress because no evidence was

4

found on Salmeron following his arrest and Salmeron did not have standing to contest the search of the apartment.

Salmeron's trial counsel then argued:

> Based on the testimony of the officer, he stated that he did not — he did not have any information about the identity of Mr. Salmeron before he obtained the search warrant. And I pressed on him, "How do you find out the affidavit" — "the identity of Mr. Salmeron?" He said it was after the arrest. And I asked him, "How did you then have a search warrant" — "an arrest warrant for Mr. Salmeron when you don't even know who he was?" Which means that either two things, that the affidavit was not executed on the date of the search or arrest — because if you look at it, it was signed around the 29th. Why the arrest was on the 4th?

The trial court reviewed the search warrant and stated it was issued at 8:30 a.m. on October 4th. The trial court then stated, "I don't know how that 29th got in there or not. It's clerical error or brain — whatever. But I — I'm not sure I understand exactly what you're trying to suppress. What your point is, the arrest warrant, your argument there, I understand, is it has the name of the defendant in it." Trial counsel responded, "Before they found out who the defendant is." The trial court indicated there had been testimony to that effect, but that it was not sure the testimony made the arrest warrant invalid. Trial counsel then stated there was no need to go forward on the motion to suppress, but he wanted "a limiting instruction if the Court considers that affidavit is incorrect or don't [sic] meet the status for the Court to issue a limiting instructions [sic] as to any evidence obtained in reference to the search and the arrest warrant that he [sic] cannot be attributed to the defendant." The trial court indicated it would take up that request at the charge conference and "may or may not give something."

The charge prepared by the trial court did not contain a limiting instruction under article 38.23 of the code of criminal procedure. Trial counsel did not object that the charge did not

5

include the instruction or make another request for an instruction.[4] The jury convicted Salmeron of delivering more than 400 grams of methamphetamine and assessed punishment of fifteen years' imprisonment and a $15,000 fine.

Salmeron filed a motion for new trial on the ground the verdict is contrary to the law and the evidence. Without conducting a hearing, the trial court overruled the motion for new trial.

### Ineffective Assistance of Counsel

In one issue, Salmeron asserts his trial counsel was ineffective by not requesting at the charge conference that an instruction under article 38.23 of the code of criminal procedure be included in the jury charge.

To succeed on a claim for ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984); *Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012) (citing *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)). The first prong requires the defendant to show counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 687–88, 689; *Ex parte Lane*, 303 S.W.3d 702, 707 (Tex. Crim. App. 2009). The second prong requires the defendant to show there is a reasonable probability that, but for his counsel's errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694; *Ex parte Lane*, 303 S.W.3d at 707.

In determining whether a defendant has met his burden, we consider the totality of the representation and the particular circumstances of each case. *Ex parte Lane*, 303 S.W.3d at 707. We strongly presume counsel's conduct fell within the wide range of reasonable professional

---

[4] Salmeron does not complain on appeal that the trial court erred by failing to include a limiting instruction under article 38.23 of the code of criminal procedure in the jury charge.

assistance and do not judge counsel's actions in hindsight. *Strickland*, 466 U.S. at 689; *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). The fact that another attorney might have pursued a different strategy at trial is insufficient to prove counsel was ineffective. *Scheanette v. State*, 144 S.W.3d 503, 509 (Tex. Crim. App. 2004).

An ineffective assistance claim must be "firmly founded in the record," and the record must affirmatively demonstrate the claim has merit. *Menefield*, 363 S.W.3d at 592; *Goodspeed*, 187 S.W.3d at 392; *see also Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App.), *cert. denied*, 131 S. Ct. 3073 (2011) ("Allegations of ineffectiveness must be based on the record, and the presumption of a sound trial strategy cannot be overcome absent evidence in the record of the attorney's reasons for his conduct."). In most cases, a silent record that provides no explanation for counsel's actions will not overcome the strong presumption of reasonable assistance. *See Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003). Direct appeal is usually an inadequate vehicle for raising an ineffective assistance claim because the record is generally undeveloped. *Menefield*, 363 S.W.3d at 592–93. Counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective. *Id.* at 593. "If trial counsel is not given that opportunity, then the appellate court should not find deficient performance unless the challenged conduct was 'so outrageous that no competent attorney would have engaged in it.'" *Id.* (quoting *Goodspeed*, 187 S.W.3d at 392).

Under article 38.23, the trial court is required to exclude any evidence that it finds, as a matter of law, was obtained in violation of the Constitution or the laws of the United States or of the State of Texas. TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (West 2005); *Robinson v. State*, 377 S.W.3d 712, 719 (Tex. Crim. App. 2012). However, where there is a fact issue regarding the manner in which the evidence was obtained, article 38.23(a) requires the trial court to submit

the question to the jury with an instruction that, if the jurors find that the evidence was obtained in violation of the law, they are not to consider it in reaching their verdict. TEX. CODE CRIM. PROC. ANN. art. 38.23(a); *Robinson*, 377 S.W.3d at 719. To be entitled to an article 38.23(a) instruction, a defendant must show (1) the evidence heard by the jury raised an issue of fact; (2) the evidence on that fact was affirmatively contested; and (3) the contested factual issue was material to the lawfulness of the challenged conduct in obtaining the evidence. *Madden v. State*, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007). If the defendant successfully satisfies these requirements, inclusion of a properly worded article 38.23 instruction in the charge is mandatory. *Id.* However, where no issue is raised by the evidence, the trial court acts properly in refusing a request to charge the jury. *Id*; *see also Robinson*, 377 S.W.3d at 719.

While Salmeron argues on appeal that he was entitled to an article 38.23 instruction because of an illegal arrest and search, his analysis focuses on the search warrant. Nevertheless, we will address both warrants.

As to the arrest warrant, Salmeron argues there was an issue of fact regarding when the warrant was issued because (1) the warrant is dated October 4, 2010, but the intelligence report indicates it was obtained on October 10, 2010, and (2) Carrasco testified he did not know Salmeron's name until after the arrest. However, Ortiz, not Carrasco, was the affiant on the affidavit in support of the arrest warrant, and Ortiz was not questioned about how Salmeron was identified for purposes of the affidavit. Further, both the affidavit and the warrant are dated October 4, 2010 and both Ortiz and Carrasco testified the October 10, 2010 date in the intelligence report was incorrect. Finally, Salmeron's arrest outside the apartment did not lead to the seizure of any evidence and, therefore, could not be the basis of an article 38.23 instruction. Salmeron, therefore, has not established that he was entitled to an instruction under article

8

38.23(a) based on the validity of the arrest warrant. *See Robinson*, 377 S.W.3d at 719; *Carmen v. State*, 358 S.W.3d 285, 296 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd).

Similarly, Salmeron has not established he was entitled to an instruction under article 38.23(a) based on the validity of the search warrant. Salmeron asserts the different dates on the warrant, the affidavit in support of the warrant, and in the intelligence report raise an issue of fact about whether a valid warrant existed for the search of the apartment on October 4, 2010. The warrant indicates it was issued at 8:30 a.m. on October 4, 2010. The intelligence report contains a statement that the warrant was obtained on October 10, 2010. Finally, the affidavit in support of the warrant bears two dates, one stamped "Oct 04 2010" and one handwritten stating the affidavit was "[s]ubscribed and sworn to before" a district judge on October 29, 2010.

Ortiz, Carrasco, Myers, and McNeil all testified the warrants were issued prior to the search. Carrasco and Ortiz testified the October 10, 2010 date in the intelligence report on Operation Starlight's activities was incorrect. Carrasco speculated the district judge wrote October 29, 2010 on the affidavit because that was when the district judge "actually approved and reviewed each document." Carrasco testified "that's what I'm guessing happened because I do know that we went and visited with him and he reviewed each document before it was signed" and that he believed "that's why the stamp is there for October 4th." Salmeron did not affirmatively challenge or contest the reasonableness of these explanations. Thus, on this record, we conclude the dates together with the proffered explanations with respect to the dates did not raise an issue of fact that would have entitled Salmeron to an article 38.23(a) instruction. Because Salmeron has failed to establish there was a fact issue relating to either the arrest warrant or the search warrant that entitled him to an article 38.23(a) instruction, he cannot establish that counsel was ineffective by failing to request the instruction at the charge

conference. *Hardin v.* State, 951 S.W.2d 208, 211 (Tex. App.—Houston [14th Dist.] 1997, no pet.) (because defendant was not entitled to instruction under article 38.23, he could not show error by counsel or that any error affected the outcome of case and, therefore, could not prevail on his ineffective assistance of counsel claim).

Even if we were to assume the different dates associated with the search warrant raised a fact issue regarding whether there was a valid search warrant prior to the search of the apartment,[5] Salmeron is also required to establish that he was prejudiced by trial counsel's failure to pursue the instruction. *Garza v. State*, 213 S.W.3d 338, 347–48 (Tex. Crim. App. 2007); *Carmen*, 358 S.W.3d at 295. To show prejudice, Salmeron must establish by a preponderance of the evidence that the jury would have found in his favor under article 38.23 and that there is a reasonable probability the result of the case would have been different. *See Jackson v. State*, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998) (per curiam); *Howes v. State*, 120 S.W.3d 903, 907–08 (Tex. App.—Texarkana 2003, pet. ref'd) (defendant was not harmed by trial court's failure to include article 38.23(a) instruction in charge because contested evidence was not sole evidence supporting verdict).[6] Salmeron, at a minimum, had the burden in the trial court to develop facts and details concerning when and how the search warrant was obtained sufficient to conclude that the warrant was invalid. *Jackson*, 973 S.W.2d at 957. This Salmeron did not do. The existence of questions about the validity of the search warrant is not enough to establish that trial counsel

---

[5] *See Robinson*, 377 S.W.3d at 719 ("Evidence to justify an Article 38.23(a) instruction can derive 'from any source,' no matter whether 'strong, weak, contradicted, unimpeached, or unbelievable.'" (quoting *Garza v. State*, 126 S.W.3d 79, 85 (Tex. Crim. App. 2004)).

[6] *See also Baggerly-Duphorne v. State*, No. 05-11-00761-CR, 2012 WL 6014745, at *3 (Tex. App.—Dallas Dec. 4, 2012, no pet.) (not designated for publication) (defendant's claim that counsel was ineffective by failing to obtain a limiting instruction under article 38.23 was meritless because defendant failed to establish jury would have determined issue in her favor);*Chavis v. State*, No. 14-11-00634-CR, 2012 WL 6017711, at *5–6 (Tex. App.—Houston [14th Dist.] Dec. 4, 2012, pet. filed) (mem. op., not designated for publication) (defendant's ineffective assistance of counsel claim overruled because officer's inconsistent testimony about information in search warrant was insufficient to establish defendant would have prevailed on motion to suppress); *Guyton v. State*, No. 10-07-00070-CR, 2009 WL 290935, at *7 (Tex. App.—Waco Feb. 6, 2009, pet. dism'd) (not designated for publication) ("Because [defendant] can establish only the existence of a fact issue, we cannot say with any confidence that a pretrial motion to suppress would have been granted or that the jury would have found in his favor under article 38.23" and, therefore, defendant failed to establish prejudice from failure to request instruction).

10

was ineffective. *Jackson*, 973 S.W.2d at 957; *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994) (counsel will not be declared ineffective when the record does not contain sufficient evidence to support the claim); *Bollinger v. State*, 224 S.W.3d 768, 779–80 (Tex. App.— Eastland 2007, pet. ref'd).

Further, even if we assume the evidence from the apartment was illegally seized, the remaining evidence of Salmeron's guilt is overwhelming. This evidence included Ortiz's and Carrasco's testimony about Salmeron's participation in the negotiations to purchase the narcotics, the recording of the negotiations, Benitez's testimony incriminating Salmeron in the drug deal, Benitez's delivery of the methamphetamine to Ortiz, and Salmeron's presence at the apartment at the time the money for the drug transaction was to be delivered. Accordingly, we conclude that Salmeron did not meet his burden of establishing the jury would have found in his favor under article 38.23 and that there is a reasonable probability the result of the case would have been different. *See Howes*, 120 S.W.3d at 907–08; *Vrba v. State*, 69 S.W.3d 713, 719 (Tex. App.—Waco 2002, no pet.).

Finally, although Salmeron filed a motion for new trial, he did not raise the issue of ineffective assistance of counsel in the motion and did not have a hearing on the motion. Consequently, Salmeron's trial counsel has not been given an opportunity to explain his actions following the introduction of all the evidence or whether, for strategic reasons, he decided the best course of action was to use the various dates relating to the warrants to attempt to create doubt concerning the reliability of the evidence. Nor has Salmeron shown that this case is one of those extraordinary situations in which the face of the record shows counsel's challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Menefield*, 363 S.W.3d at 593.

We conclude Salmeron has not met his burden of showing that trial counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability the result of the case would have been different if a limiting instruction had been included in the jury charge. *See id.* (in most cases, silent record will not overcome the strong presumption of counsel's reasonable assistance); *Freeman v. State*, 125 S.W.3d 505, 506–07 (Tex. Crim. App. 2003) ("The record in this case is insufficient to support the conclusion [that appellant received ineffective assistance of counsel] because appellant did not develop a record in the trial court for the purpose of establishing this claim."). Accordingly, we resolve Salmeron's sole issue against him.

## Modification of Judgment

Salmeron was charged with, and convicted of, delivering more than 400 grams of a controlled substance. The trial court's judgment, however, reflects Salmeron was convicted of unlawful possession of a controlled substance. Further, the trial court's judgment reflects Salmeron was represented by Paul Banner while the reporter's record indicates Salmeron was represented by Winston Udeh. This Court has the power to modify an incorrect judgment to make the record speak the truth when we have the necessary information to do so. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd). Accordingly, on our own motion, we modify the trial court's judgment to reflect Salmeron was convicted of the delivery of more than 400 grams of a controlled substance and was represented at trial by Winston Udeh.

12

As modified, we affirm the trial court's judgment.


_____
ROBERT M. FILLMORE
JUSTICE


Do Not Publish
TEX. R. APP. P. 47

120360F.U05



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

ELMER O. SALMERON, Appellant

No. 05-12-00360-CR    V.

THE STATE OF TEXAS, Appellee

On Appeal from the 194th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F11-00773-M.
Opinion delivered by Justice Fillmore.
Justices FitzGerald and Evans participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

The section of the judgment titled "Offense for which Defendant Convicted" is modified to state "Delivery of 400 grams or more of a controlled substance."

The section of the judgment titled "Attorney for Defendant" is modified to state "Winston Udeh."

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 27th day of March, 2013.

ROBERT M. FILLMORE
JUSTICE