

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1522-11

**JAMES HENRY GELINAS, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE EIGHTH COURT OF APPEALS
### EL PASO COUNTY

**PRICE, J., filed a dissenting opinion.**

### DISSENTING OPINION

The court of appeals did not regard the plurality opinion in *Hutch* to be of binding

precedential value,[1] but nevertheless found it to be persuasive authority and opted to follow

it.[2] I also find at least aspects of the plurality opinion in *Hutch* to be persuasive, and for

---

[1]

*Hutch v. State*, 922 S.W.2d 166 (Tex. Crim. App. 1996) (plurality opinion).

[2]

*See Gelinas v. State*, 2011 WL 2420858, at *5 (No. 08-09-00246-CR, Tex. App.—El Paso,
delivered June 15, 2011) (not designated for publication) ("The State suggests that because *Hutch* is

reasons which I elaborate upon in this opinion, I agree with the court of appeals that the appellant suffered egregious harm in this case. Therefore, I respectfully dissent.

## THE *ALMANZA* STANDARD

To the extent that *Hutch* simply reiterated basic propositions established by *Almanza v. State*,[3] deriving from its exegesis of Article 36.19 of the Texas Code of Criminal Procedure,[4] I presume that it remains intact notwithstanding the plurality's disavowal today. I think it is still safe to say, for example, as the Court has done in, *e.g.*, *Stuhler v. State*,[5] that

> [j]ury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. In examining the record to determine whether jury-charge error is egregious, the reviewing court should consider the entirety of the jury charge itself, the evidence, including the contested issues and weight of the probative evidence, the arguments of counsel, and any other relevant information revealed by the record of the trial as a whole.[6]

Relying upon this standard, with or without the glosses added by the plurality opinion in *Hutch*, and unlike the plurality today, I conclude that the jury-charge error in this case egregiously harmed the appellant.

---

a plurality opinion, we need not follow it. That is certainly true. But because we agree with the *Hutch* majority, we choose to follow it.").

[3]   *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985) (opinion on reh'g).

[4]   TEX. CODE CRIM. PROC. art. 36.19.

[5]   218 S.W.3d 706 (Tex. Crim. App. 2007).

[6]   *Id*. at 719 (footnotes omitted).

## APPLICATION OF THE *ALMANZA* STANDARD

### The Entirety of the Jury Charge

The application paragraph with respect to the Article 38.23(a) instruction in this case,[7] we all agree, instructed the jury to discount Officer Marquez's testimony under exactly the opposite circumstances than the law requires. It instructed the jury that the appellant's initial stop would be "illegal," such that it must "disregard" Marquez's testimony, in the event that it should find "that his vehicle *failed* to comply with the Texas Transportation Code Provision, which requires a white light to illuminate the vehicle's license plate[.]"[8] But, of course, because a white light is exactly what the law does require, Marquez's stop of the appellant for *failing* to display a white light would have been quite legal, and in that event, the jury would not be properly instructed under Article 38.23(a) to disregard evidence stemming from the stop.

Without Marquez's testimony, and the videotape that was made from his squad car

---

[7] *See* TEX. CODE CRIM. PROC. art. 38.23(a) ("No evidence obtained by an officer . . . [illegally] shall be admitted in evidence against the accused on the trial of any criminal case. In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.").

[8] All emphasis is supplied unless otherwise indicated. As if to ameliorate its impact, the State characterizes this error in the application paragraph as merely "grammatical." State's Brief at 10. The plurality today similarly wishes to characterize it as no more than "typographical." Plurality Opinion at 13. Of course, it is neither grammatical (the sentence is perfectly grammatical) nor what I would regard as "typographical." The error is in the concept expressed, not in the way it is expressed or how it is rendered on the page.

pursuant to his roadside detention of the appellant, the State's evidence in this case would not have rationally supported the appellant's conviction for driving while intoxicated. But convict him the jury did. The jurors could have reached this verdict by one of only two possible paths, consistent with the erroneous application paragraph. First, they could have 1) recognized the mistake in the jury charge and self-corrected it (reading "complied" for "failed to comply"), 2) found that the appellant's license-plate light was *not* in fact white, and then 3) convicted him based upon the evidence Marquez supplied, notwithstanding the plain (if erroneous) language of the jury instruction that they should disregard his testimony. This is the plurality's preferred hypothesis. Second, they could have 1) followed the erroneous instruction to the letter, 2) found that the appellant's license-plate light *was* in fact white (and therefore legal), and 3) for that reason convicted the appellant based upon the evidence Marquez supplied, in keeping with the literal dictates of the erroneous instruction (but contrary to what Article 38.23(a) actually requires). We have no way of knowing which path the jury took to convict the appellant.

One thing we do know for certain, however, is that pursuing the first path would have presented the jury with a difficult ethical dilemma. The record shows that the jury was duly sworn, and though the content of that oath does not appear in the record, we may safely assume it was the statutory oath to render a true verdict "according to *the law* and the

evidence[.]"[9] The jurors were explicitly instructed, moreover, albeit in a boilerplate provision of the jury charge, that they "are the exclusive judges of the facts proved, of the credibility of the witnesses and weight to be given their testimony, *but the law of the case you will receive from the Court which is given you herein and you are to be governed thereby*." There is a general presumption on appeal that jurors "have understood and followed the court's charge absent evidence to the contrary."[10] Entertaining this presumption, I would have expected that jurors who understood the application paragraph as literally composed, but who actually suspected that it was legally inaccurate, to have experienced a certain degree of angst with respect to their collective ability to follow their oath, given the unequivocal instruction to take the law (however inaccurate) from the court and be governed thereby. A jury note, perhaps? Here, there was none. That leads me to prefer the hypothesis that the jury followed the second path above, finding (as it could readily have done on the facts of this case) that the appellant's license-plate light was in fact white (such that he did *not* "fail to comply with" the Transportation Code), and to have inappropriately considered Marquez's testimony anyway (as they were required to do per the erroneous instruction) and therefore convicted him.

The plurality today obviously believes otherwise, placing great faith in the power of

---

[9] TEX. CODE CRIM. PROC. art. 35.22.

[10] *Hutch*, *supra*, at 172.

the abstract portion of the Article 38.23(a) instruction to alert the jury to the mistake in the application portion. But nothing in the language of the abstract portion serves *necessarily* to signal an inaccuracy in the application paragraph. True, the abstract instruction correctly informs the jury that illegally obtained evidence is inadmissible.[11] That, in combination with the language in the application paragraph that expressly tells the jury that the Transportation Code requires a white light to illuminate the license plate, could *conceivably* have caused the jury to question the accuracy of the application paragraph's characterization of a *failure* to display a white light as a circumstance that would render the stop "illegal." Far more likely, it simply caused juror confusion and consternation. In any event, even if it did alert the jury to the mistake, that would only have entangled the jury in the ethical dilemma I have described above.[12] It would not have clearly instructed the jury how to resolve it.

---

[11] Well, at least the written instruction does. The court reporter's record reflects that what the trial court read aloud to the jury was that no evidence obtained "as a result of an [sic] *lawful* stop" would be admissible against the appellant, though the written instruction said "unlawful." Thus, as it was read aloud, the abstract Article 38.23(a) instruction was fully consistent with the erroneous application paragraph and would not have served to alert the jury to the problem. The State has not shown that this represents an incorrect transcription, and so we have no occasion to doubt it.

[12] The ethical dilemma confronting the jury in this case is reminiscent of that in *Penry v. Johnson*, 532 U.S. 782, at 798-800 (2001). There, the United States Supreme Court, like this Court in *Hutch*, invoked the appellate presumption "that jurors follow their instructions." *Id*. at 799. The Supreme Court ultimately found the presumption unhelpful in *Penry*, however, because the instructions at issue were internally contradictory, and "it would have been both logically and ethically impossible for a juror to follow both sets of instructions." *Id*. at 799-800. Here, similarly, the best that can be said about the Article 38.23(a) jury instruction is that it was hopelessly self-contradictory, injecting "an element of capriciousness" into the case with respect to the most pivotal issue at the guilt phase of trial. *Id*. at 800. Under these circumstances, it is difficult to imagine how the error could *not* have "affect[ed] the very basis of the case, deprive[d] the defendant of a valuable right, or vitally

**The Evidence**

During voir dire, counsel for the appellant made it clear that the credibility of the arresting police officer would be an issue in the case. He revisited that theme during his opening statement at the beginning of the guilt phase of trial. In his direct testimony, Marquez maintained that appellant's license-plate light was "the wrong color." He acknowledged on cross-examination that he failed to note this fact in his offense report. He testified that the license-plate light was red rather than white, and he did not remember his earlier testimony from an administrative license revocation hearing at which he apparently could not say what color the light actually was—only that it was "somewhat of a color other than white" but nevertheless "faint-colored." He even acknowledged at one point on cross-examination that he simply "couldn't tell if it was white." The appellant's wife later testified, however, that the light illuminating the license plate was white, not red, and that the car had passed its official state inspection every year for the four or five years that they had owned the truck.[13] While the appellant also contested the efficacy of the State's evidence to show that he was intoxicated, the most vigorously contested and clearly dispositive issue in the

---

affect[ed] a defensive theory." *Stuhler*, *supra*.

[13] The plurality today declares that "the testimony at trial suggests that the video fails to conclusively establish the color of the license plate light." Plurality Opinion at 2. By contrast, the court of appeals observed unequivocally that "[t]he videotape of the traffic stop depicts a white light illuminating the license plate." *Gelinas*, *supra*, at *2. We do not presently have the video before us in the record. In any event, from the court of appeals's observation it seems at least evident that the jury could readily have found the license-plate light to have been white.

case was whether Marquez was telling the truth to say that the license-plate light was "the wrong color." A properly instructed jury might well have resolved the Article 38.23(a) issue in the appellant's favor and, discounting Marquez's testimony, acquitted him.[14]

## The Arguments of the Parties

At every relevant point during their opening statements, as well as in their final arguments to the jury, lawyers for the parties argued the facts with respect to the issue of the color of the license-plate light as if the jury were properly instructed. For all the jurors could tell from the debate of the parties respecting Marquez's credibility, the appellant preferred them to find that the light was white, while the State urged them to find that it was not. This is another factor that contributes to the plurality's impression that the jury must necessarily have suspected that the Article 38.23(a) application paragraph was flawed—indeed, so obviously flawed that the jury must have known what the trial court had *meant* to say.

But when it came to their iterations of the *law*, the parties unequivocally endorsed the

---

[14] The plurality asserts that we should not give undue weight to the fact that the issue was contested, given that there must be a contested fact issue before an Article 38.23(a) instruction is required to be submitted to the jury in the first place. Plurality Opinion at 8 &13. Presumably the plurality is worried that, otherwise, every erroneous Article 38.23(a) instruction will be deemed egregiously harmful. *Id*. at 8. But the fact that a certain class of jury-charge errors will thus, almost by definition, have at least one *Almanza* factor that tends to favor a finding of egregious harm does not counsel against giving that factor the same weight as it would have in the context of any *other* kind of jury-charge error. In any event, it will not be every case in which the evidence supporting the Article 38.23(a) instruction will be as solid as it is in this case. An Article 38.23(a) instruction must be given any time the evidence supports it, however minimally. *Robinson v. State*, 377 S.W.3d 712, 719 (Tex. Crim. App. 2012). That does not mean that every Article 38.23(a) jury-instruction error causes egregious harm.

Article 38.23(a) jury instruction as it literally, but mistakenly, read.[15] At the beginning of trial, describing how they could expect the trial to proceed, the trial court had informed the jurors that the parties would have a chance to examine the jury charge "to consider any changes that they feel need to be made to those instructions." Later, during their respective final arguments, both the prosecutor and trial counsel for the appellant recited the Article 38.23(a) application paragraph aloud—verbatim, without correction.[16] The prosecutor ultimately assured the jurors, specifically with respect to the Article 38.23(a) instructions, that, "while they're a little bit convoluted, it says exactly what it should say."[17] This argument would have echoed the trial court's boilerplate jury instruction that "the law of the case you will receive from the Court which is given you herein and you are to be governed thereby." The jurors had every reason to assume that the Article 38.23(a) instruction indeed said "exactly what it should say." The proposition that they nevertheless had the wherewithal

---

[15] The plurality is plainly mistaken to say that "both parties also argued the correct law very clearly to the jury." Plurality Opinion at 12. What the parties asserted with respect to the *law* suffered from the same flaw that the jury instruction did. Their arguments with respect to how the facts of the case ought to be applied to the law could only have confused any juror who was paying attention.

[16] To be fair, the prosecutor did not recite the entire application paragraph to the jury, as can been seen from Judge Johnson's dissenting opinion. Dissenting Opinion at 4-5. But he read a portion of it to the jurors verbatim, and invited them approvingly to "read the rest of it" for themselves.

[17] The plurality disapproves of *Hutch*'s particular reliance upon the principle that the arguments of the parties "cannot substitute for instructions by the court." Plurality Opinion at 9-10. Because the parties here did not argue the *law* correctly, but instead simply endorsed the incorrect statement of the law contained in the jury charge, this principle does not apply to this case in any event.

(although the plurality calls it "common sense," it might just as plausibly be characterized as fortuitous jury nullification—not common at all, and contrary to our ordinary appellate presumption) to recognize the flaw, know how to correct it, and apply it properly to the facts of this case as thus corrected, strikes me as doubtful at best.

## CONCLUSION

It seems quite evident from a straightforward application of the *Almanza* factors to the particulars of this case that the error in the Article 38.23(a) jury instruction affected the very basis of the case, deprived the appellant of a valuable right, and vitally affected his defensive theory—take your pick. In short, the appellant was indeed deprived of "a fair and impartial trial."[18] I would affirm the judgment of the court of appeals. Because the Court today does not, I respectfully dissent.


FILED:     May 15, 2013
PUBLISH

---

[18] TEX. CODE CRIM. PROC. art. 36.19.