

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-21-00097-CR

_____

DANIEL LYNN JOHNSON, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 355th District Court
Hood County, Texas
Trial Court No. CR14353

Before Kerr, Birdwell, and Wallach, JJ.
Opinion by Justice Wallach

**OPINION**

The jury convicted Appellant Daniel Lynn Johnson of driving while intoxicated. After Johnson pled true to an enhancement paragraph and to two habitual-offender counts,[1] the jury assessed his punishment at seventy-five years' confinement. The trial court sentenced Johnson accordingly, and he now appeals. In two issues, he argues that the trial court erred by not including a jury instruction under Texas Code of Criminal Procedure Article 38.23 and that the error was harmful. Because we hold that no instruction was required, we affirm.

**Background**

On July 28, 2018, a 911 dispatcher received a call about a man who appeared to be driving while intoxicated at a Lake Granbury boat ramp. The caller, a man named Donald Harmon, described the vehicle being driven by the intoxicated person as a white Ford F-150 pickup. At trial, he identified Johnson as the man whom he had seen that night. Harmon testified that he had seen Johnson struggling with a boat trailer and that "[t]here [were] things like slurred speech and cussing and a lot of aggressive driving."

Texas Game Warden Preston Whisenhunt testified that he had responded that night to a call from the sheriff's office "that a possible intoxicated person was at the

---

[1]The indictment alleged in the enhancement paragraph that Johnson had been convicted in 2006 of driving while intoxicated, felony repetition. The habitual offender counts alleged that he had been convicted twice in 1997 of driving while intoxicated, felony repetition.

Rough Creek Park and that they were having a hard time driving their vehicle in the parking lot to back it into the water to load the boat onto the trailer." He then testified that when he had arrived at the boat ramp, he noticed Johnson's truck, which matched the description that he had been given by dispatch. He then "came in contact with [Johnson] and began talking to him and his girlfriend." Whisenhunt stated that during that conversation, Johnson admitted to having driven the truck.

Whisenhunt noticed an odor of alcohol on Johnson and that Johnson was slurring his words. To check for signs of intoxication, the officer asked Johnson to state his ABCs and to perform two "float tests" (a finger-touch test involving counting up from one to four and back down again, and a palm-pat test that required Johnson to pat first his palm and then the back of his hand with his other hand). Whisenhunt followed those tests with standardized field sobriety tests, but he waited fifteen minutes before administering the field sobriety tests because he was not sure how long it had been since Johnson had been on the lake. While waiting, Whisenhunt confirmed with the dispatcher that the 911 caller had reported that it was a man who had been driving the truck and that the caller was willing to write a statement.

Based on Johnson's performance on the field sobriety tests, Whisenhunt arrested Johnson for driving while intoxicated. He then obtained a warrant for Johnson's blood. In applying for the warrant, Whisenhunt filled out a form "Affidavit for Search Warrant." The form contained the following paragraph with blanks, which Whisenhunt filled in:

3

On  July 28, 2018      at  10:50 PM , I made a traffic stop on a   Ford F-150   [,] which was being driven by  Daniel Lynn Johnson        , the same person identified in paragraph 1 above, for   Driving While Intoxicated    [,] which was in Hood County, Texas.

Then, in a narrative section that followed, the officer stated,

Received a call from Hood County Dispatch about a possible intoxicated person trying to load their boat at Rough Creek Park. Made contact with Daniel Johnson. He mumbled his ABCs and struggled with finger to thumb touch. I waited 15 minutes from the time I got there because I did not know how long he had been off the water. Then, I performed the Standardized Field Sobriety Tests.

Under that narrative section was an area for Whisenhunt to check options for intoxication signs that he had observed and for Johnson's performance on field sobriety tests. In that area, under a category titled "Driving Habits Observed Prior to Stop," Whisenhunt checked the line printed, "Not observed, stopped for other violation."

At trial, Whisenhunt acknowledged on cross-examination that, although the affidavit form stated that he had made a "traffic stop," he had not stopped Johnson for any traffic movement, and he described his contact with Johnson as "a consensual stop." Whisenhunt stated multiple times that he had not seen Johnson driving. Bodycam footage admitted at trial showed Whisenhunt's entire encounter with Johnson from when he arrived at the area to when he told Johnson that he was going to be arrested.

Texas Department of Public Safety forensic scientist Lindsay Ornelas testified that the testing of Johnson's blood showed a blood–alcohol level of 0.282. Katie

4

Barton, a law enforcement officer with the Hood County District Attorney's Office, testified about two of Johnson's prior DWI convictions—one in 1987 and one in 1992.

At the charge conference, Johnson requested "the inclusion of a [Texas Code of Criminal Procedure] Article 38.23 instruction as to the legality of the obtained evidence," argued that "it would be error not to include it where the officer's testimony and the video shows Defendant disputed [the] sole reason for stopping the Defendant," and objected to the charge as written without an instruction. Johnson also submitted proposed instructions, two of which related to the stop. The first would have instructed the jury to disregard Whisenhunt's testimony about the stop if it found that "on the occasion in question [Johnson] was or was not driving his vehicle on a boat ramp immediately preceding his stop and detention by the officers herein or you have a reasonable doubt thereof." The other would have requested the jury to disregard all evidence obtained as a result of Johnson's arrest if it found that "on the occasion in question, the Texas [G]ame Warden did not have a reasonable suspicion to believe that [Johnson] was previously driving a motor vehicle in an illegal manner, , [sic] or if [the jury had] a reasonable doubt thereof." The trial court rejected Johnson's requests.

The jury found Johnson guilty. At the punishment stage, Johnson pled true to the enhancement paragraph and the two habitual counts, and Barton then testified about Johnson's 1997 and 2006 DWI convictions. The jury assessed punishment at

5

seventy-five years' confinement in the Institutional Division of the Texas Department of Criminal Justice, and the trial court sentenced Johnson accordingly. Johnson now appeals.

## Discussion

In Johnson's first issue, he argues that the trial court erred "by not including a special charge jury instruction under [A]rticle 38.23(a) of the Texas Code of Criminal Procedure when there was a factual dispute about the nature of the initial contact between [Johnson] and the arresting officer." In his second issue, he contends that the trial court's failure to include this instruction was harmful and requires reversal.

## I. Jury Instruction under Texas Code of Criminal Procedure Article 38.23

Article 38.23 provides that no evidence obtained in violation of the law shall be admitted against an accused and that

> [i]n any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

Tex. Code Crim. Proc. Ann. art. 38.23(a). Evidence need not be excluded, however, if "the evidence was obtained by a law enforcement officer acting in objective good faith reliance upon a warrant issued by a neutral magistrate based on probable cause." *Id.* art. 38.23(b).

Before a jury instruction is required under Article 38.23, three requirements must be met:

6

(1) The evidence heard by the jury must raise an issue of fact;

(2) The evidence on that fact must be affirmatively contested; and

(3) That contested factual issue must be material to the lawfulness of the challenged conduct in obtaining the evidence.

*Madden v. State*, 242 S.W.3d 504, 509–11 (Tex. Crim. App. 2007). In other words, "an Article 38.23 instruction must be included in the jury charge only if there is a factual dispute about how the evidence was obtained." *Garza v. State*, 126 S.W.3d 79, 85 (Tex. Crim. App. 2004); *see also Chambers v. State*, 663 S.W.3d 1, 5 (Tex. Crim. App. 2022) (holding instruction should have been given when officer testified that he pulled the defendant over because the defendant's truck was missing a rear license plate, but the truck in fact had a license plate, and the video evidence raised a question about whether the officer actually could see it and thus raised a contested fact issue about whether an objectively reasonable basis for the stop existed).

The evidence raising a fact issue may be "strong, weak, contradicted, unimpeached, or unbelievable," but it "must still *actively conflict* with the State's assertion of material fact in order to raise an affirmatively contested fact issue for an Article 38.23 instruction." *Chambers*, 663 S.W.3d at 11–12 (op. on reh'g). There is nothing on which to instruct the jury when there is no affirmative evidence raising a contested fact issue or when the question about suppression of evidence is one of law. *Holmes v. State*, 248 S.W.3d 194, 199–200 (Tex. Crim. App. 2008). Further, "if other facts, not in dispute, are sufficient to support the lawfulness of the challenged

conduct, then the disputed fact . . . is not material to the ultimate admissibility of the evidence." *Rocha v. State*, 464 S.W.3d 410, 419 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd) (quoting *Madden*, 242 S.W.3d at 510). "In other words, '[t]he disputed fact must be an essential one in deciding the lawfulness of the challenged conduct,'" and thus a trial judge does not err by declining to include an instruction about an immaterial fact. *Id.* (quoting *Madden*, 242 S.W.3d at 511); *see also Madden*, 242 S.W.3d at 518.

## II. Analysis

Johnson argues that the jury should have been asked to decide whether his and Whisenhunt's interaction "was either a consensual encounter or a traffic stop" because "if the jury determined that . . . Whisenhunt conducted a traffic stop of Johnson, the testimony of . . . Whisenhunt did not justify this stop at its inception as Whisenhunt conceded that he did not observe Johnson operate a vehicle." *See Cuttrell v. State*, No. 09-15-00155-CR, 2016 WL 1468633, at *5 (Tex. App.—Beaumont Apr. 13, 2016, no pet.) (mem. op., not designated for publication) (discussing difference between a consensual encounter—"when an officer approaches a citizen in a public place to ask questions, and the citizen is willing to listen and voluntarily answers"— and an investigative detention—"when a person yields to a police officer's show of authority under a reasonable belief that he is not free to leave"). In other words, because Whisenhunt admitted that he had not seen Johnson driving, he had no basis on which to conduct a traffic stop, and the jury should have been asked to decide

8

whether his interaction with Johnson arose from a traffic stop or a consensual encounter. He argues that from that finding, "the jury could conclude that the stop was illegal [because Whisenhunt did not have reasonable suspicion for the stop], and the evidence obtained therefrom would have been illegally obtained and . . . disregarded." To make this argument, Johnson relies entirely on the affidavit form's use of the phrase "traffic stop."

Johnson is correct that Whisenhunt did not strike out the pre-printed phrase "traffic stop" from the affidavit form. However, neither the rest of the completed affidavit form nor any other evidence at trial presented any controverting facts about how the officer initially engaged with Johnson or why.[2] The narrative block on the form said nothing about stopping Johnson while Johnson was operating his vehicle and instead explained that Whisenhunt had encountered Johnson in response to a call from the sheriff's office. Whisenhunt further checked a box on the affidavit form indicating that he had not observed any driving by Johnson.[3]

---

[2]We note that people sometimes refer to an encounter between a law enforcement officer and a defendant near a vehicle or after driving as a "traffic stop" even when the officer did not pull over the defendant while the defendant was operating a vehicle. *See, e.g.*, *Gleason v. State*, No. 02-19-00429-CR, 2021 WL 4101629, at *7 (Tex. App.—Fort Worth Sept. 9, 2021, no pet.) (mem. op., not designated for publication).

[3]To the extent that Johnson argues that Whisenhunt had no authority to approach or detain him without personally seeing him driving, we point out that Whisenhunt had been relayed the information from Harmon's 911 call. *See Derichsweiler v. State*, 348 S.W.3d 906, 914–15 (Tex. Crim. App. 2011) (holding that detaining officer need not be personally aware of every fact that objectively supports a

9

Whisenhunt's testimony and the bodycam footage—which captured the interaction between the officer and Johnson from its beginning to Johnson's being told of his arrest—were similar. Whisenhunt testified that he had responded to the sheriff's department's call, did not stop Johnson because of any vehicle movement that he had witnessed, and did not see Johnson driving. The bodycam footage corroborated Whisenhunt's testimony.

The only dispute raised by the affidavit form is how to describe the interaction between Whisenhunt and Johnson. There was no dispute in the evidence about how or why the interaction occurred and no evidentiary dispute that it was in response to Harmon's 911 call that reported Johnson's impaired driving. *See Robinson v. State*, 377 S.W.3d 712, 720 (Tex. Crim. App. 2012) (stating, in case in which officer had stopped the defendant for failing to signal a turn, that although there was a legal question of whether the defendant was legally required to signal his movement at the juncture of two roads, there was no factual dispute about the physical character of the roadway); *cf. Yoda v. State*, 630 S.W.3d 470, 483 (Tex. App.—Eastland 2021, pet. ref'd) (stating, in case in which the defendant had been stopped for speeding, that there was no factual dispute about what the officer did, saw, or heard and that the only dispute was to the

reasonable suspicion to detain and that a court may consider "cumulative information known to the cooperating officers," including 911 dispatchers, as well as information provided by identified citizen-informants); *Kinnett v. State*, 623 S.W.3d 876, 913–14 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd) ("A traffic stop may be justified if the facts underlying the stop are observed by a civilian informant."). Johnson's argument does not address these facts.

officer's opinion that what he saw constituted obvious speeding). Because there was no dispute about the material facts of the interaction between Whisenhunt and Johnson, the trial court did not err by declining to include an Article 38.23 instruction.

We overrule Johnson's first issue. Because this issue is dispositive, we do not address his second issue. *See* Tex. R. App. P. 47.1.

## Conclusion

Having overruled Johnson's dispositive first issue, we affirm the trial court's judgment.

/s/ Mike Wallach
Mike Wallach
Justice

Publish

Delivered: June 15, 2023