**AFFIRMED; Opinion Filed December 28, 2016.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

_____

### No. 05-15-00773-CR
_____

**TONY DEJUAN JONES, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 203rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F13-59558-P**

## MEMORANDUM OPINION

Before Justices Francis, Fillmore, and Stoddart
Opinion by Justice Fillmore

A jury convicted Tony Dejuan Jones of possession with intent to deliver one gram or more but less than four grams of cocaine. Jones pleaded true to the enhancement paragraph in the indictment, and the jury assessed punishment of seven years' imprisonment. In one issue, Jones asserts the trial court erred by not instructing the jury under article 38.23 of the code of criminal procedure "to disregard any statements made if the statements resulted from an improper detention." We affirm the trial court's judgment.

### Background[1]

Because of complaints of "high traffic" to apartment 136 in the Terrace Apartment Complex, Dallas police officers Terry Lewis and Michael Lawter, along with several other

---

[1] Because Jones does not challenge the sufficiency of the evidence to support the conviction, we recite only those facts necessary to address his complaint on appeal.

officers, conducted a "knock and talk" at the apartment. Lewis testified that he stood to the side of the door and did a "real quick knock." After Jones answered the door, Lewis moved in front of the door, greeted Jones, and initiated a conversation about why the officers were at the apartment. Lewis asked Jones if there were any illegal narcotics in the apartment. According to Lewis, Jones told him there was "weed" or marijuana in the apartment and pointed toward the kitchen bar. Lewis could see two "baggies" on the bar. Jones then said the officers could "come in and look" and Lewis saw a "green leafy substance" in the baggies on the kitchen bar. The officers did a protective sweep of the apartment to make sure that no one else was in the apartment. They then left the apartment, handcuffed Jones, and told Jones that he was detained pending a search warrant. After obtaining a search warrant, Lewis and the other officers searched the apartment and, in addition to the marijuana, found 1.2 grams of cocaine.

According to Lawter, he stood on the left side of the door to the apartment while Lewis knocked on the door. Jones answered the door, and Lewis explained why the officers were there and asked if there were any drugs in the apartment. Jones responded that there were drugs in the kitchen. They "had" Jones "come out" of the apartment, placed him into handcuffs for officer safety, and did a protective sweep of the apartment to make sure no one else was "hiding in the back." After obtaining a search warrant, the officers searched the apartment and found marijuana and cocaine.

Jones testified that he was visiting Robert Lockridge, who leased the apartment. Lockridge left the apartment on an errand, and Jones was the only person in the apartment when the police knocked on the door. According to Jones, the first officer he spoke with was Hispanic and was neither Lewis nor Lawter. The Hispanic officer:

> [G]reeted his self. And I forgot his name. Stated why he was there. He asked me was I the owner of the apartment. I said no. He grabbed me by my wrist and pulled me out, asked me was anyone else available inside the residence. I said no.

He asked me if there was anything inside the residence they should know about. I said no. And he asked me why was the residence dark at the time. I said I don't know. And he pushed the door open, which the door could swing back. And he had the full open view of the apartment.

He pulled out his flashlight and began to do a sweep from right to left. And that's when he got to the counter top. And he said, "What is this on the counter top? Is that weed?" I said, "Looks like it. And that's what it is." With that being said, he told me put my hands behind my back. He said, "You're not being arrested. You're being detained." I did that. And the rest of the crew beside the one who I initially made contact with made their way inside and began to search the premises.

Jones testified the officers did not have a search warrant at the time they searched the apartment.

The jurors also heard the recording of a statement made by Jones at the police station shortly after his arrest during which he said that he answered the door, and the officer asked him to "step out" of the apartment. Jones stated that, after the officer asked if he had any drugs or guns, he said that he had "weed on the counter right there" and told the officer that he could come into the apartment.

As to the constitutionality of the search of the apartment, the trial court's charge to the jury stated:

> You are instructed that no evidence obtained by an officer or other person in violation of any provision of the Constitution or law of the State of Texas, or of the Constitution or the laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

> You are further instructed that under the law, as applied in this case, a search of the apartment without consent would not be lawful. Any objects constitution [sic] unlawful contraband falling within the plain view of an officer who is lawfully on the premises and which are immediately apparent to the officer as contraband are subject to seizure without a warrant and may be lawfully admitted into evidence.

> Therefore, of [sic] you find beyond a reasonable doubt that Tony Jones voluntarily gave consent for Officer Lewis to enter the apartment and that Officer Lewis then saw what was immediately apparent to him as contraband in plain sight, you may consider the evidence seized as a result of entering the apartment and the subsequent search of the apartment pursuant to a search warrant.

–3–

> If you do not so find, or if you have a reasonable doubt thereof, you may not consider the evidence seized as a result of entering and searching the building for any purpose.

Jones did not object to this instruction and did not request any additional instruction on the constitutionality of the search.

## Standard of Review

We review alleged jury charge error in two steps. *Cortez v. State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015). We first determine whether error exists in the charge. *Id.* Second, if there is error, we review the record to determine whether the error caused sufficient harm to warrant reversal. *Id.*; *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005). When, as in this case, the defendant fails to object, we will not reverse for jury charge error unless the record shows "egregious harm" to the defendant. *Ngo*, 175 S.W.3d at 743–44.

## Article 38.23(a)

Article 38.23(a) of the code of criminal procedure prohibits the admission of evidence against an accused in a criminal trial if the evidence was obtained in violation of the constitutions or laws of Texas or the United States. TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (West 2006). To be entitled to an article 38.23(a) instruction, a defendant must show (1) an issue of historical fact was raised in front of the jury, (2) the fact was contested by affirmative evidence at trial, and (3) the fact is material to the constitutional or statutory violation that the defendant has identified as rendering the particular evidence inadmissible. *Robinson v. State*, 377 S.W.3d 712, 719 (Tex. Crim. App. 2012). The jury must be instructed to disregard the evidence "if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions" of article 38.23(a). TEX. CODE CRIM. PROC. ANN. art. 38.23(a); *see also Robinson*, 377 S.W.3d at 719.

A defendant's right to submission of a jury instruction under article 38.23 is limited to disputed issues of material fact. *Madden v. State*, 242 S.W.3d 504, 509–10 (Tex. Crim. App.

2007); *see also Hamal v. State*, 390 S.W.3d 302, 307 (Tex. Crim. App. 2012) (appellant was not entitled to an article 38.23 instruction where there was "no factual dispute" about what information the officer "received before and during the [traffic] stop"). Evidence to justify an article 38.23(a) instruction can derive "from any source," no matter whether "strong, weak, contradicted, unimpeached, or unbelievable." *Robinson*, 377 S.W.3d at 719 (quoting *Garza v. State*, 126 S.W.3d 79, 85 (Tex. Crim. App. 2004)). However, the evidence must "raise a '*factual* dispute about how the evidence was obtained.' Where the issue raised by the evidence at trial does *not* involve controverted historical facts, but only the proper application of the law to undisputed facts, that issue is properly left to the determination of the trial court." *Id.* (quoting *Garza*, 126 S.W.3d at 85). In addition, if the undisputed facts "are sufficient to support the lawfulness of the challenged conduct, then the disputed fact issue is not submitted to the jury because it is not material to the ultimate admissibility of the evidence." *Madden*, 242 S.W.3d at 510.

Jones argues the trial court should have instructed the jury to disregard any statement that he made regarding marijuana being present in the apartment if the statement resulted from an "improper detention." However, "the question of whether a given set of historical facts amount to a consensual police-citizen encounter or a detention under the Fourth Amendment . . . is an issue of law[.]" *Johnson v. State*, 414 S.W.3d 184, 192 (Tex. Crim. App. 2013) (quoting *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008)). A question asking the jury to decide whether a detention is unlawful is "wholly incorrect." *See Madden*, 242 S.W.3d at 511 (requested 38.23(a) instruction that asked jury to decide whether officer had "reasonable suspicion" to continue to detain defendant improperly asked jury to decide question of law); *see also Robinson*, 377 S.W.3d at 720 (defendant not entitled to instruction under article 38.23(a) when dispute was "with respect to the legal significance of what are, in essence, undisputed

facts).[2]  It is the trial court, not the jury, that "decides what quality and quantum of facts are necessary" to establish whether an individual was detained and whether that detention was lawful.  *See Madden*, 242 S.W.3d at 511.[3]  "Only if one or more of those necessary facts are disputed" does the trial court instruct the jury to determine that disputed fact.  *Id.*

Jones has failed to identify a disputed issue of fact relevant to the legal issues of whether he was detained prior to making the statement that there was marijuana present in the apartment or whether that detention was lawful.  *See id.* at 511–12.  Further, his complaint on appeal that the trial court should have instructed the jury to disregard any statement Jones made "if the statements resulted from an improper detention" is focused only on the law, not on any specific historical fact for the jury to decide.  *See id.* at 512.  We conclude the trial court did not err by failing to give this "wholly incorrect" instruction.  *See id.* at 511.  We resolve Jones's sole issue against him.

We affirm the trial court's judgment.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
150773F.U05

---

[2] *See also Totten v. State*, No. PD-0483-15, 2016 WL 5118331, at *2 (Tex. Crim. App. Sept. 21, 2016) (not designated for publication) (dispute about whether, in light of testimony, defendant's detention was objectively reasonable under Fourth Amendment, "is solely a legal question that juries are unauthorized to resolve").

[3] Jones filed a pretrial motion to suppress, asserting the police "entered and searched" the apartment and arrested him without a warrant.  He specifically argued the police did not have reasonable suspicion to detain or investigate him.  The trial court carried the motion to suppress with the trial and denied it after the close of evidence.  Jones has not appealed the trial court's denial of the motion to suppress.



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

TONY DEJUAN JONES, Appellant

No. 05-15-00773-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 203rd Judicial District Court, Dallas County, Texas,
Trial Court Cause No. F-1359558-P.
Opinion delivered by Justice Fillmore,
Justices Francis and Stoddart participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 28th day of December, 2016.