In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-17-00110-CR**
_____

**JARROD DWAYNE MARKS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 163rd District Court**
**Orange County, Texas**
**Trial Cause No. B160473-R**

**MEMORANDUM OPINION**

In four appellate issues, Jarrod Dwayne Marks challenges his conviction for possession of a controlled substance, hydromorphone, in an amount of less than one gram. According to Marks, his conviction should be overturned for four reasons: (1) the evidence introduced in his trial failed to establish that he ever owned, had custody of, or controlled the hydromorphone that his wife took from him and then gave to the police; (2) the trial court erred by admitting the hydromorphone into evidence,

1

given the breaks in the chain of custody needed to tie him to the hydromorphone or its container; (3) the hydromorphone should have been excluded from evidence because his wife took it from him without his consent before turning it over to the police; and (4) if the hydromorphone was admissible, the trial court should have instructed the jury to disregard it if the jury determined or had a reasonable doubt about whether the hydromorphone was taken from Marks in an illegal search.

Based on our conclusions that issues one, two, and four are without merit and that issue three was not properly preserved for appellate review, we affirm.

Background

The issues Marks raises in this case revolve around the hydromorphone that the police discovered in a package of cigarettes that the jury determined was in Marks' possession or control. Charisa LeDoux, Marks' ex-wife when the criminal case was tried but his spouse on the day he was arrested, testified against Marks in the guilt-innocence phase of the trial. According to Charisa, she arranged to meet with Marks at an apartment complex so that Marks could sign some papers relevant to their impending divorce. The testimony shows the meeting occurred in July 2016. When the meeting was ending, Charisa called the police and notified them where Marks could be found so that the police could arrest Marks on an outstanding warrant as he left the meeting.

2

Shortly after Marks left the meeting, he was detained by the police while they investigated whether he was the person who was wanted on an outstanding warrant. After the police placed Marks in handcuffs, Charisa approached Marks. In the presence of the police, Charisa went through Marks' pockets to determine whether he had any pawn tickets on him that she might use to reclaim property that he might have pawned. While going through Marks' pockets, Charisa removed a syringe, and after determining that it was empty, returned it to Marks. When one of the officers saw that, he told Charisa to retrieve the syringe and discard it because he did not want to get pricked. She complied. With the officers watching, Charisa also took a package of cigarettes and some money from Marks' pockets that she stuffed into her pocket.

Officer Bryan Perry, one of the police officers involved in Marks' arrest, testified in Marks' trial. As Officer Bryan Perry was putting Marks into a patrol car, Marks told Officer Perry that he wanted the property Charisa took from him to be returned. Although Charisa had begun walking away from the patrol car, Officer Perry caught up with her and advised her that Marks wanted his property back. Charisa handed the package of cigarettes and the money to him. The testimony about what transpired after the police arrived at the apartment complex is consistent with video recordings that were taken by a camera in a patrol car next to the location

3

where the police arrested Marks and body-cameras that were worn by the police that day. The three video recordings relevant to Marks' arrest were admitted into evidence during the trial.

Officer Perry testified that before returning the package of cigarettes to Marks, he opened the package to inspect it for contraband. According to the officer, upon inspecting the package, he found "a clear foil-type packaging that contained . . . one and a half small white tablets of some sort" in the bottom of the package under where the cigarettes would normally sit. Officer Perry's testimony shows that in the course of Marks' arrest, the officers seized Marks' Texas I.D. card, a package of cigarettes, between five and seven dollars in cash, a lighter, and a wrapper that contained one and one-half small white tablets. Two additional police officers testified during the guilt-innocence phase of Marks' trial: Officers Leslie Lovelace and Timothy Pruitt. Their testimony is consistent with Officer Perry's.

The State sent the white tablets found in the cigarette package for testing to the Jefferson County Regional Crime Lab. A gas chromatograph analysis on one of the tablets revealed that it contained at least .151 grams of hydromorphone. The police did not retain the syringe. Officer Pruitt, who was the lead officer on the scene of Marks' arrest, testified that based on his twenty-six years of experience as a police officer, he is aware that addicts use syringes to inject hydromorphone.

4

Prior to the trial, in a motion to suppress, Marks challenged the adequacy of the chain of custody for the evidence that the officers seized from Marks. In the motion, Marks argued that Charisa was out of sight for a sufficient period that she could have tampered with the evidence before turning it over to Officer Perry. During the hearing on Marks' motion to suppress, which the trial court conducted more than a month before Marks' trial began, the trial court viewed the video recordings and heard the following four witnesses testify about Marks' arrest: (1) Officer Perry; (2) Charisa; (3) Jason Ply, Charisa's former boyfriend, who was standing nearby when Charisa took the package of cigarettes from Marks; and (4) Karen Northern, Marks' mother, who testified that Charisa called her when she was distraught and told her that she had set up Marks. When the hearing ended, the trial court denied the motion to suppress.

Standard of Review

In his first issue, Marks argues the evidence the jury considered in his trial was insufficient to allow the jury to find that he owned, had custody of, or controlled the tablets that Officer Perry discovered in the package of cigarettes he got from Charisa. According to Marks, the evidence from his trial shows that Charisa is the person who had custody or control over the package of cigarettes containing the tablets when the police arrested Marks.

5

We review a challenge to the sufficiency of the evidence supporting a defendant's conviction under the standards established by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).[1] Under the *Jackson* standard, we view the evidence in the light most favorable to the verdict.[2] Based on that evidence and any reasonable inferences from it, we determine whether any rational factfinder could have found the essential elements of the offense beyond a reasonable doubt.[3] "The jury is the sole judge of credibility and weight to be attached to the testimony of witnesses."[4] In this role, the jury may choose to believe all, some, or none of the testimony presented by the parties.[5] Further, the jury is permitted to draw multiple reasonable inferences from facts as long as the inferences the jury draws from the evidence are reasonable.[6] If the evidence admitted in a defendant's trial allows reasonable jurors to reach conflicting inferences, we presume the jury

---

[1] *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010).

[2] *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)).

[3] *Id.*

[4] *Id*.

[5] *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

[6] *Temple*, 390 S.W.3d at 360.

resolved any such conflicts in a way that is consistent with the jury's verdict, and we defer to the jury's determination when the jury's conclusions from the evidence were reasonable.[7]

In reviewing the record, we consider the evidence that was before the jury in the trial regardless of whether the evidence should have been admitted.[8] Direct and circumstantial evidence are equally probative of an actor's guilt, and "'circumstantial evidence alone can be sufficient to establish guilt.'"[9] In a circumstantial evidence case, each fact need not point directly and independently to the guilt of the defendant when the combined and cumulative force of the incriminating circumstances warrant a conclusion that the defendant is guilty.[10] "After giving proper deference to the factfinder's role, we will uphold the verdict unless a rational factfinder must have had reasonable doubt as to any essential element."[11]

---

[7] *Id.*

[8] *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

[9] *Temple*, 390 S.W.3d at 359 (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)).

[10] *Id.* (quoting *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993)); *Hooper*, 214 S.W.3d at 13.

[11] *Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009).

## Sufficiency of the Evidence

To prove that Marks was guilty of possessing the hydromorphone, the State needed to prove, beyond reasonable doubt, that Marks knowingly or intentionally possessed the hydromorphone that Officer Perry discovered in the package of cigarettes.[12] The State, however, was not required to establish that his possession of it was exclusive.[13] Thus, "'[w]hen the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband.'"[14] Under the circumstances in Marks' case, the State had to establish that affirmative links existed that allowed the jury to reasonably infer that Marks' connection to the hydromorphone was more than just fortuitous.[15]

---

[12] *See* Tex. Health & Safety Code Ann. § 481.102(3)(A) (West Supp. 2018), § 481.115(a), (b) (West 2017).

[13] *Poindexter v. State*, 153 S.W.3d 402, 412 (Tex. Crim. App. 2005 ("The mere fact that a person other than the accused might have joint possession of the premises does not require the State to prove that the defendant had *sole* possession of the contraband.").

[14] *Id*. at 406 (quoting *Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App 1981)).

[15] *See Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016); *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006); *Poindexter*, 153 S.W.3d at 406.

"In deciding whether the evidence is sufficient to link the defendant to contraband, the trier of fact is the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony."[16] A jury may use both direct and circumstantial evidence in determining that a defendant knowingly or intentionally was in possession of contraband.[17] Thus, juries are allowed to consider circumstantial evidence, such as the defendant's presence or proximity to the controlled substance, together with other relevant circumstances, to infer that the defendant possessed the controlled substance and to reject the notion that the defendant was merely present in the location where the controlled substance was found.[18] Examples of the categories of affirmative links that juries may consider include:

> (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether

---

[16] *Poindexter*, 153 S.W.3d at 406.

[17] *See Tate*, 500 S.W.3d at 413.

[18] *Id.* at 413-14.

other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.[19]

In Marks' trial, the jury viewed the video recordings that were relevant to his arrest. In them, the package of cigarettes can be seen in Marks' pocket until Charisa took it from him. The video recordings also show Charisa removing some money from Marks' pockets and placing the package of cigarettes and the money in her pocket. They then show that she removed these items from her pocket and handed them to Officer Perry. The video recordings also reveal that Marks had a syringe in his pocket and the jury heard evidence that hydromorphone is injected using a syringe. Viewing the evidence in the light most favorable the jury's verdict, the combined logical force of the evidence allowed the jury to infer that the cigarette package belonged to Marks, that he knew the hydromorphone was in the package, and that his connection to the package was not merely fortuitous. We overrule Marks' first issue.

---

[19] *Id*. at 414 (quoting *Evans,* 202 S.W.3d at 162 n.12)

Chain of Custody

In issue two, Marks argues that the State failed to sufficiently tie him to the hydromorphone discovered in the package of cigarettes because Charisa, who he claims had the opportunity to tamper with the package, had the package in her possession before she gave it to the police. The argument that Marks raises on appeal, which suggests that Charisa's possession of the package broke the chain of custody that might have tied him to the package of cigarettes and its contents are consistent with the argument he made in his motion to suppress. In the hearing on that motion, the trial court ruled that Marks' suggestion that Charisa planted the hydromorphone tablets in the package of cigarettes went "to the weight, not the admissibility" of the evidence the jury could consider in deciding whether Marks possessed the hydromorphone.

"Although the State must prove that a defendant is guilty beyond a reasonable doubt, the State's burden does not require it to disprove every conceivable alternative to a defendant's guilt."[20] No dispute exists in this case about whether one of the tablets in the cigarette package that Officer Perry got from Charisa tested positive at the Jefferson County Regional Crime Lab for the presence and required amount of hydromorphone. But Marks does argue that the evidence linking him to

[20] *Id*. at 413.

11

the hydromorphone failed to prove that he knew the hydromorphone was in the package because the police did not discover the hydromorphone immediately after he was detained. He suggests that Charisa had the package in her possession long enough that she could have placed hydromorphone inside. Marks argues that "when there is evidence of tampering or impropriety, such evidence should be excluded." Additionally, he argues "the moment where [Charisa] obtained custody, any tenuous link between [his] alleged ownership of the cigarette pack and the contraband later found inside was shattered."

We disagree with Marks' conclusion that there is any actual evidence showing that Charisa tampered with the package. Charisa denied planting the drugs in the package, and as the exclusive judge of the credibility of the witnesses, the jury was entitled to believe her.[21] In the absence of any direct evidence of tampering, questions that might exist about the strength of the evidence establishing a proper chain of custody were matters that concerned the weight of the evidence, not its

---

[21] *See Temple*, 390 S.W.3d at 360.

admissibility.[22] "[P]roof of only an opportunity to tamper, alter, or commingle the challenged evidence is not sufficient to mandate its exclusion."[23]

In Marks' case, while Charisa possibly had the opportunity to tamper with the package of cigarettes while walking away from the officers, no affirmative evidence was introduced showing Charisa tampering with the package before she handed it to Officer Perry. For that reason, we hold the items that the police took from Charisa were admissible, and the trial court did not err when it concluded that Marks' arguments about the break in the chain of custody was a matter that went to the weight the jury might give to the package and its contents.[24] We overrule Marks' second issue.

## Exclusionary Statute

The Texas exclusionary statute, article 38.23 of the Texas Code of Criminal Procedure, provides that "[n]o evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in

---

[22] *See Davis v. State*, 313 S.W.3d 317, 348 (Tex. Crim. App. 2010); *Lagrone v. State*, 942 S.W.2d 602, 617 (Tex. Crim. App. 1997).

[23] *Qualls v. State*, 547 S.W.3d 663, 680 (Tex. App.—Fort Worth 2018, pet. ref'd).

[24] *See Davis*, 313 S.W.3d at 349.

evidence against the accused on the trial of any criminal case."[25] In issue three, Marks argues that the trial court's ruling admitting the package of cigarettes and hydromorphone tablets in it violated this statute.

Our review of the record reveals that Marks failed to assert the admission of this evidence would violate article 38.23.[26] Instead, the arguments Marks made during the suppression hearing and in his trial about this evidence addressed whether a sufficient chain of custody tied him to the package of cigarettes and the hydromorphone when his wife had custody of the package immediately before turning it over to the police.

"Whether a party's particular complaint is preserved depends on whether the complaint on appeal comports with the complaint made at trial." *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009). In his brief, Marks argues that Charisa conducted an illegal search when she took the package from him and taking the package amounted to a theft. Neither in Marks' motion to suppress, in the hearing on the motion, nor in his trial did Marks ever argue that Charisa conducted an illegal search or that she had stolen the package of cigarettes from him. We conclude that

---

[25] Tex. Code Crim. Proc. Ann. art. 38.23(a) (West 2018).

[26] *Id*. art. 38.23 (West 2018).

Marks failed to preserve the argument he advances in issue three for our review.[27] For that reason, the issue is overruled.

Charge Error

In issue four, Marks argues that even if the hydromorphone was admissible, the trial court should have instructed the jury that it should disregard any evidence that it believed or held a reasonable doubt about whether the hydromorphone had been obtained in a way that violated his legal rights. In Marks' case, while the question of whether Charisa could legally search Marks is a matter that Marks might have (but did not) place at issue, the fact Charisa took the package from Marks was undisputed. The following criteria must exist before a defendant is entitled to a limiting instruction under article 38.23(a): "(1) The evidence heard by the jury must raise an issue of fact; (2) The evidence on that fact must be affirmatively contested; and (3) That contested factual issue must be material to the lawfulness of the challenged conduct in obtaining the evidence."[28] In other words, there must be a disputed issue of material fact before a trial court is required to give the jury a limiting instruction under article 38.23.[29]

---

[27] *See* Tex. R. App. P. 33.1.

[28] *Madden v. State*, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007).

[29] *Id.* at 510-11.

Because no fact dispute existed about whether Charisa took the package, whether she legally had the right to search her husband presents a question of law, not a question of fact. Therefore, the trial court was under no duty to give the jury the instruction that Marks suggests should have been included in the charge.[30]

We overrule issue four. Having overruled the appellant's issues, we affirm the trial court's judgment.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on December 5, 2018
Opinion Delivered February 20, 2019
Do Not Publish

Before McKeithen, C.J., Horton and Johnson, JJ.

---

[30] *Robinson v. State*, 377 S.W.3d 712, 719 (Tex. Crim. App. 2012).